Jeffrey BARTELS, Plaintiff,

v.

The INCORPORATED VILLAGE OF LLOYD HARBOR, Mayor Leland M. Hairr, Deputy Mayor Jean Thatcher, John Ritter, Jr., Robert Schwarz, Police Chief Charles Flynn, Sergeant Renald Difonzo, Police Officer Morrissey, Police Officer Muller, Police Officer Baffa, Police Officer Grimm, Police Officer Cortes, Police Officer O'Shaughnessy, Police Officer Donnaruma, Mary Mohrman, Brian Madsen, Thomas Scholl, and John Does No. 1 and 2, Defendants.

No. 10 CV 5076(PKC)(GRB).

United States District Court,
E.D. New York.

Signed March 31, 2015.

James M. Maloney, Law Office of James M. Maloney, Port Washington, NY, for Plaintiff.

Carl S. Sandel, Drew William Sumner, Sean R. Strockkyj, Matthew Charles Weir, Morris Duffy Alonso & Faley, New·York, NY, Frank A. Andrea, III, Andrea & Towsky, Esqs., Garden City, NY, for Defendants.

### ORDER ADOPTING REPORT AND RECOMMENDATION

GARY R. BROWN, United States Magistrate Judge.

Plaintiff Jeffrey Bartels initiated this action, pursuant to 42 U.S.C. § 1983, against Defendants the Incorporated Village of Lloyd Harbor ("Village") and various Village officials and employees, including members of the Village's police department, alleging violations of his constitutional rights. On June 17, 2014, Defendants filed their motion for summary judgment on all of Plaintiff's claims. On July 1, 2014, Plaintiff moved for leave to file a Third Amended Complaint. Both motions were referred to the Honorable Gary R. Brown, United States Magistrate Judge, for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b).

In his Report and Recommendation ("Report"), issued February 18, 2015, Judge Brown recommended that Defendants' summary judgment motion be granted, that Plaintiff's motion to amend be denied, and that this action be dismissed in its entirety. (Report (Dkt. 57) at 205.) Plaintiff timely filed his objections to the Report, although he chose not to object to the denial of his motion to amend. (Plaintiff's Objections to Magistrate's Report and Recommendation (Dkt. 58) at 8 ("Plaintiff does not take issue with the denial of leave to amend the current pleading. . . .").) Defendants timely re-

sponded to Plaintiff's objections. As discussed below, the Court adopts the Report in its entirety, and dismisses this action.

## I. STANDARD OF REVIEW

■ When a party objects to a magistrate judge's report and recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v. Mawhir*, 08–CV–322 (TJM)(DRH), 2011 WL 933846, at *1 (S.D.N.Y. March 16, 2011) (citing *Farid v. Bouey*, 554 F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008); *Frankel v. N.Y.C.*, 06–CV–5450 (LTS)(DFE), 07–CV–3436 (LTS)(DFE), 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009)). "After reviewing the report and recommendation, the Court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.' " 28 U.S.C. § 636(b)(1)(C); *O'Diah*, 2011 WL 933846, at *2 (quoting 28 U.S.C. § 636(b)(1)(C)).

Although Plaintiff has filed objections to Judge Brown's Report, his objections largely repeat the arguments he presented in his opposition to the Defendants' summary judgment motion.[1] The Court, therefore, reviews the Report for "clear error." *O'Diah*, 2011 WL 933846, at *1.

## II. DISCUSSION

The Court has reviewed Judge Brown's extremely thorough and well-reasoned Report, and finds that it is free of any error, no less clear error. With respect to Plaintiff's claim that Judge Brown erred in finding that Plaintiff's photo of the "swerving truck" disproved his claim that the truck drove at him (Dkt. 58 at ECF 4; Dkt. 57 at 206–10), the Court finds that the record fully supports Judge Brown's conclusion. As Judge Brown explained, Plaintiff's own testimony indicated that he took this photo *as* the truck was allegedly veering toward him. Plaintiff's argument that there is a factual dispute as to whether Plaintiff took the photo *before* the truck swerved toward him is belied not only by Plaintiff's own deposition testimony, as recounted in the Report (Dkt. 57 at 207), but by common sense. There would have been no reason for Plaintiff to photograph the truck unless he believed that it was coming at him, just as he testified. *Id.* And, as Judge Brown correctly found, this photo showed that at the moment Plaintiff claimed the truck was swerving toward him, it was actually driving away from Plaintiff and over the median line in the road, just as the truck driver and passenger had testified. All of Plaintiff's other assertions of error are amply addressed in

---

1. Plaintiff's objections also reference material that is not in the record and is wholly irrelevant to this action. For example, Plaintiff discusses a video that he took and posted on YouTube of an unrelated car accident that occurred in or near the Village on March 1, 2015, two days before Plaintiff filed his objections. (*See* Dkt. 58 at 4 n. 1.) Plaintiff claims that the video shows Defendant Police Officer Morrissey preventing Plaintiff from filming the accident scene. *Id.* Aside from the complete lack of relevance of the video to this case, it does not depict what Plaintiff claims. In fact, the video shows the accident scene that Plaintiff claims he was prevented from filming. Rather, the video shows Officer Morrissey directing Plaintiff to keep his distance from the car involved in the accident to prevent Plaintiff from being injured in the event the car, which had slid over an icy embankment, fell any further in Plaintiff's direction.

Judge Brown's Report, and do not require further discussion.

## CONCLUSION

Accordingly, for the reasons set forth in the Report, Defendants' motion for summary judgment is granted in its entirety, and Plaintiff's motion for leave to amend the complaint is denied. All of Plaintiff's claims are dismissed with prejudice. The Clerk is respectfully directed to terminate this case.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

GARY R. BROWN, United States Magistrate Judge.

On July 22, 2012, plaintiff Jeffrey Bartels ("plaintiff" or "Bartels") filed a Second Amended Complaint against defendants Incorporated Village of Lloyd Harbor, Mayor Leland M. Hairr ("Hairr"), Deputy Mayor Jean Thatcher ("Thatcher"), John Ritter, Jr. ("Ritter"), Police Chief Charles Flynn, Sergeant Renald Difonzo ("Difonzo"), Police Officer Morrissey, Police Officer Muller, Police Officer Baffa ("Baffa"), Brian Madsen ("Madsen"), Thomas Scholl ("Scholl"), Robert Schwarz, Police Officer Grimm, Police Officer Cortes, Police Officer O'Shaughnessy, Police Officer Donnaruma, Mary Mohrman ("Mohrman"),[1] and John Does Nos. 1 and 2 (collectively "defendants"), pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging violations of his constitutional rights arising out of four incidents in the Village of Lloyd Harbor, New York.[2] *See* Second Amended Compl., Docket Entry ("DE") [33]. The gravamen

of plaintiff's claims is that defendants suppressed plaintiff's free speech under the First and Fourteenth Amendments by retaliating and engaging in a campaign to retaliate against him for his lawful exercise of those rights. *Id.* In addition, plaintiff asserts claims for violations of his rights to due process and equal protection under the Fifth and Fourteenth Amendments and a claim for assault under state law. *Id.* Presently before the Court are (1) defendants' motion for summary judgment dismissing all of plaintiffs' claims pursuant to Federal Rule of Civil Procedure ("Rule") 56, DE [45], and (2) plaintiff's cross motion to file a third amended complaint pursuant to Rule 15, DE [54], which motions were referred to the undersigned for a Report and Recommendation by the Honorable Pamela K. Chen. *See* Electronic Order Referring Mot., dated December 11, 2014. For the reasons set forth below, the undersigned respectfully recommends that the defendants' motion be granted, the plaintiff's cross-motion be denied, and the action be dismissed in its entirety.

## BACKGROUND

### A. Factual Background

The following facts, drawn from the second amended complaint, the parties' Local Rule 56.1 Statements and other evidence of record in this action, are construed in the light most favorable to the non-moving party, except as otherwise noted. *See Ayazi v. United Fed'n of Teachers Local 2*, 487 Fed.Appx. 680, 681 (2d Cir.2012); *Capobianco v. City of New York*, 422 F.3d 47, 54–55 (2d Cir.2005).

---

1. Defendant Mohrman was dismissed from this action on October 26, 2012. DE [38].

2. The parties represent that plaintiff's claims against defendants Baffa, Grimm, Cortes and Schwarz have been discontinued, as have any and all claims arising out of the Second Incident and Fifth Incident alleged in the amend-

ed complaint. *See* DE [47] at 1, n. 1; DE [49] at 1, n. 1. In addition, plaintiff represented that he intended to discontinue this action against defendants Hairr, Scholl and Difonzo. *See* DE [49] at 1, n. 1. Accordingly, summary judgment should be granted as to the claims against these defendants.

For over 46 years, plaintiff has been a resident of the Village of Lloyd Harbor (the "Village") and describes himself as a concerned resident who has documented and spoken out against, *inter alia*, environmental harm caused by the destruction of healthy trees by Village personnel and unsafe conditions on or near Village roadways. Second Amended Compl. ¶ 14, DE [33]. Plaintiff frequently makes complaints to the Lloyd Harbor Police Department for a variety of reasons. Defs.' 56.1 Stmt. ¶ 22, DE [48]. Between the years 2005 and 2012, plaintiff's complaints have resulted in the creation of over five hundred police complaint forms. *Id.* ¶ 23.

This action centers on the following four events.

### 1. The Parking Ticket

On May 7, 2009, while driving on a public road in the Village, plaintiff observed that a support bracket holding up the electric power line and other cables on one of the poles along Lloyd Harbor Road was crooked. Second Amended Compl. ¶ 19, DE [33]. Plaintiff pulled his vehicle over to the side of the road, put on the vehicle's emergency flashers and exited to examine the condition and photograph the pole. *Id.* ¶¶ 19, 24. While plaintiff was outside his vehicle on Lloyd Harbor Road taking pictures, defendant Police Officer Morrissey of the Lloyd Harbor Police Department arrived at the location, observed plaintiff and told Bartels that his vehicle was illegally parked. Defs.' 56.1 Stmt. ¶¶ 3–4, DE [48]. Plaintiff attempted to explain that, in his view, he was not parked illegally because he had not left his vehicle unattended. *Id.* ¶ 4. After both plaintiff, and Morrissey drove away, plaintiff pulled over again to use a nearby public pay phone. *Id.* ¶ 5. At that point, Officer Morrissey also pulled over, approached plaintiff at that location and issued Bartels a summons for illegally parking, based upon

plaintiff's vehicular conduct on Lloyd Harbor Road. *Id.*

The Village retained Andrew Ellsworth as Special Prosecutor to prosecute plaintiff's parking violation. *Id.* ¶ 6. John Ritter, the Village Attorney, had recommended the appointment of Ellsworth to the Board of Trustees because plaintiff had a pending action against Ritter and other Village employees. *Id.* ¶ 7. Ellsworth was compensated at the same hourly rate that the Village pays Ritter for his work as Village Attorney. *Id.* ¶ 8. A trial was held, and plaintiff was found not guilty of the parking violation. *Id.* ¶ 9.

### 2. The Swerving Truck

In the amended complaint, plaintiff alleges that on March 18, 2010, while driving on a public road in the Village, plaintiff observed that a cable and utility line along Lloyd Harbor Road were not properly supported and affixed ineffectively to a tree limb. Second Amended Compl. ¶ 45, DE [33]. Bartels alleges that he parked his vehicle some distance away and walked back to the site with his camera to photograph the utility line. *Id.* ¶ 46. He further claims that while he was standing on the shoulder of Lloyd Harbor Road taking photographs of the cable and utility line, *Id.* ¶ 47, a Village truck driven by defendant Madsen approached the roadway heading in the eastbound lane of traffic which was the lane closest to plaintiff. Plaintiff alleged in the complaint that "he heard the engine accelerate rapidly, saw the truck turn toward him," and that its occupants attempted "to run him down as he stood on the shoulder of the road." Amended Compl. ¶ 47, DE [33]. He further contends that he "leapt over the guardrail and slid down an adjacent embankment to avoid being hit by the truck, and sustained injuries in the process." *Id.* Defendant Police Officer O'Shaughnessy investigated the complaint but was unable

to complete the investigation because plaintiff declined to file an affidavit or otherwise cooperate with an investigation. *Weir Decl.*, Ex. K at 11, ¶¶ 2–22, DE [46–11].[3]

This is, by far, the most serious of the allegations raised by the plaintiff. It is also, based upon the evidence adduced during discovery in this action, demonstrably untrue.

In his deposition testimony, plaintiff described the encounter with the truck as follows:

[T]hey were accelerating at me. And I realized-and now he started coming over towards the guardrail instead of going further. There was no traffic. Instead of going away from me he started angling the truck towards me ... I took a picture. I don't know if I got one or two shots off. And then they were still speeding at me so I was, like, my God, and I just jumped up over the guardrail. And the embankment right off that guardrail drops like this, like 15 or 20 feet ... It's just—and I jumped over. And then I landed, you know, going down the hillside. And I could remember—I think one of the shots came out is that I'm basically down in the woods. And I got a shot of the truck speeding by me up on the road level. And I was down the hillside by then.

*Weir Decl.*, Ex. B at 92–93, DE [46–2]. Plaintiff relies on this deposition testimony as his only basis to dispute defendants' contention that "[a]fter seeing plaintiff standing on the eastbound side of the road, Mr. Madsen directed the truck across a set of double yellow lines on the roadway, towards the side of the road furthest away from the location where plaintiff was standing." Defs.' 56.1 Stmt. ¶ 13, DE [48]; Pl's 56.1 Stmt. ¶ 13, DE [50].

Madsen, the driver of the truck, testified as follows:

I was driving along, it's kind of a blind turn there. The first thing I saw was him. I went into the other lane going to go around him.

\* \* \*

Q. Let's go back to when you first saw him. What did you do?

A. Well, my first instinct was to veer away from him. I went into the other oncoming lane, I sped up to get back in my lane.

*Weir Decl.*, Ex. G at 9, 11, DE [46–7]. Scholl, the passenger in the truck, described the incident as follows at his deposition:

Q. After you saw him what happened next?

A. I don't know. We went past him and—cause we went into a lane a little bit and we kept ongoing.

Q. You went in the oncoming lane a little bit?

A. Yes.

Q. You certainly remember that you went into the oncoming traffic lane?

A. Yes, not much but we did.

*Weir Decl.*, Ex. H at 11, DE [46–8].

The photographs taken and produced by the plaintiff disprove his account in several indisputable ways and, at the same time, fully support defendants' account of the incident.

---

**3.** In his opposition papers, plaintiff provides a police report indicating that Madsen told the investigating police officer that he observed plaintiff taking pictures of the truck and accelerated "to cause a blurry picture." *Maloney Decl.*, Ex. 1, DE [52–1]. However, all three witnesses to the incident agree that the truck accelerated. The only relevant question is whether the truck veered toward or away from the plaintiff, which is discussed further below.

First, the photograph of the oncoming truck, which plaintiff described as being taken after Madsen allegedly "started angling the truck towards me" and while the vehicle was "still speeding toward me" appears as follows:

*Weir Decl.*, Ex. I, DE [46–9]. Contrary to plaintiff's account, the photograph plainly does not depict a vehicle that was veering toward him. In fact, as shown in this detail depicting the relationship of the truck's front tire to the middle double yellow line in the road, the truck had, as both defendants testified, veered into the opposing lane of traffic to avoid the plaintiff. *Id.*

This section of the photograph similarly belies plaintiff's testimony in that it demonstrates that the distance that the Village truck maintained from the edge of the roadway *at the very moment plaintiff claims his safety was threatened* far exceeded the distance maintained by the vehicle immediately behind it. And though a less important point, plaintiff's claim that, other than the Village truck, "[t]here was no traffic" is undermined by this portion of the photograph, which clearly depicts a vehicle behind the Village truck and one travelling in the other direction. *Id.* Finally, plaintiff's account, which includes a dramatic fall down a 10–to 15–foot hillside *after which* he testified he "got shot of the truck speeding by me up ·on the road level," is similarly undermined by that photograph, which appears as follows:

*Weir Decl.*, Ex. J, DE [46–10]. Clearly, that photograph was taken from the vantage point of someone at the side of the road, rather than from the bottom of a 15 to 20 foot embankment.

### 3. The Vanishing Taser at the Bergh Property

On April 17, 2011, plaintiff walked from his home to a nearby street, Dolphin Rise, to check on the safety of an elderly neighbor, Mrs. Judah. Defs.' 56.1 Stmt. ¶ 15, DE [48]; Second Amended Compl. ¶ 56, DE [33]. To reach Mrs. Judah's residence, plaintiff walked across the property of his neighbors, Mr. and Mrs. Bergh. Second Amended Compl. ¶ 56, DE [33]. The area had been impacted by a storm the previous evening, and there were downed trees and power lines. Defs.' 56.1 Stmt. ¶ 16, DE [48]. Police officers Morrissey and Donnaruma were also in the vicinity. *Id.* ¶¶ 17–18. Officer Morrissey observed plaintiff walk onto a driveway and across the property of another Village resident, to wit, the Bergh property. *Id.* Plaintiff avers that when he attempted to return to his home by again crossing the Bergh property, Officers Morrissey and Donnaruma shouted to Bartels that he was trespassing. Second Amended Compl. ¶ 59, DE [33]. The officers pursued plaintiff across the property, but plaintiff informed them that he had permission to be on the Bergh property and was not trespassing. Pl.'s 56.1 Counter Stmt. ¶ 18, DE [50]. Although plaintiff claims in the amended complaint that during the encounter, Officer Morrissey removed a taser from his holster and pointed it at plaintiff while pursuing him on the Bergh property, *see* Second Amended Compl. ¶ 60, DE [33], his claim is belied by plaintiff's deposition testimony that he did not know if Morrissey had pulled out a taser but knew that Morrissey was "screwing around" with something on the left side of his belt, which plaintiff thought "was a cellphone." *Compare* Second Amended Compl., ¶ 6, DE [33], *with Weir*

*Decl.*, Ex. B at 104, DE [46–2]. When asked directly whether either officer ever pulled out a taser, plaintiff stated that he "didn't know." *Weir Decl.*, Ex. B at 105, DE [46–2]. Plaintiff claims he thereafter went into the Bergh home, and the episode ended. Second Amended Compl. ¶ 61, DE [33].

### 4. The Trespass Warning

Bartels owns and lives in a private home within the boundaries of what is known as the Fiddlers Green Association. Amended Compl. ¶ 67, DE [33]. However, plaintiff has protested certain policies of the Association and has withheld the payment of Association dues. *Id.* On June 28, 2011, plaintiff claims that defendant Police Officer O'Shaughnessy advised him that his entry into any of the common areas of the Fiddlers Green Association, such as parking areas or roadways, would constitute a trespass due to plaintiff's nonpayment of Association dues. Second Amended Compl. ¶ 67, DE [33]. Although defendant Police Department had received calls from members of the Association complaining that Bartels should not be in certain areas because he had not paid his dues, defendant O'Shaughnessy denies he warned plaintiff that his entry on the common areas would be a trespass and maintains he has nothing to do with the Fiddlers Green Association. *Weir Decl.*, Ex. K at 35–37, DE [46–11].

### B. Procedural Background

On November 3, 2010, Bartels commenced this action against defendants the Village, Hairr, Thatcher, Ritter, Flynn, Difonzo, Morrissey, Mullner, Baffa, Madsen, Scholl, Mohrman and John Does 1 and 2 alleging violations of his constitutional rights in violation of Section 1983 and a claim for assault under state law. *See* Compl. DE [1].[4] On March 12, 2011, plain-

---

4. Notably, this is not plaintiff's first attempt to establish alleged constitutional violations by the Village and its employees, including Hairr, Thatcher, Flynn, O'Shaughnessy, Di-

Fonzo, Grimm, and Ritter in this Court. In *Bartels v. Lloyd Harbor, et al.*, CV–08–1256 (AKT), plaintiff filed an action under 42

tiff filed an amended complaint, asserting four causes of action, alleging: (1) the deprivation of his rights under the First and Fourteenth Amendments by several of the defendants, for engaging and/or participating in a campaign designed to discourage the plaintiff from observing and/or photographing matters of public concern; (2) the deprivation of his rights under the due process and equal protection clauses of the Fourteenth Amendment by the defendant Village, for instituting a policy of selectively and aggressively prosecuting the plaintiff whenever the opportunity arose; and by several other defendants for implementing such policy; (3) the deprivation of his rights under the due process clause of the Fourteenth Amendment by several of the defendants for depriving him of his liberty and/or property interests without due process of law; and (4) a state law claim of assault against certain defendants. *See* Amended Compl., DE [13]. On October 12, 2011, plaintiff moved pursuant to Rule 15(d) to file a supplemental pleading. DE [25]. By Memorandum of Decision and Order dated July 2, 2012, the district court denied in part and granted in part plaintiff's motion. DE [32]. Significantly, in that Order, despite the low standard for filing amended pleadings, Judge Spatt denied plaintiff's application to amend as to two additional purported occurrences involving the Village, finding that the plaintiff failed to state a claim as to these supposed incidents, such that amendment of his complaint would be "futile." *Id.* On July 22, 2012, plaintiff filed a second amended complaint, adding

Schwarz, Grimm, Cortes, O'Shaughnessy and Donnaruma as defendants and adding three more occurrences involving these defendants. *See* Second Amended Compl., DE [33].

Defendants' now move for summary judgment pursuant to Rule 56. DE [45]. Plaintiff cross-moves to file a third amended complaint pursuant to Rule 15. DE [54]. The motions will be addressed in turn.

## DISCUSSION

### I. Defendants' Summary Judgment Motion

#### A. Standard of Review

"Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir.2013); see Fed.R.Civ.P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir.2007) (internal quotation marks and citation omitted); *see also Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008). "A fact is material if it might affect the outcome of the suit under governing law,

---

U.S.C. § 1983, *inter alia,* asserting a panoply of alleged violations based on largely similar encounters with Village officials in connection with his attempts to exercise his First Amendment rights. *See generally id.,* Compl., DE [1]. On summary judgment—decided a little more than a month before the filing of this case—Judge Tomlinson found that plaintiff could not sustain a conspiracy cause of action, *see id.,* DE [59], a decision about

which the plaintiff sought interlocutory appeal from the Second Circuit. Nevertheless, he appears to describe a "conspiracy" in this Complaint. *See* Amended Compl., ¶ 72, DE [47]. Most notably, though, following a trial in March 2011, a jury found that Bartels failed to prove *any* of his First Amendment retaliation claims as against *any* of the defendants. *See Bartels v. Lloyd Harbor, et al.,* CV–08–1256 (AKT), DE [99].

and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir.2012) (internal quotation mark and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir.2011); *see Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir.2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim"); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks and citation omitted); *see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir.2012).

 The moving party bears the initial burden of establishing "the absence of any genuine issue of material fact." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 73 n. 18 (2d Cir.2012) (internal quotation marks and citation omitted); *see Zalaski v. City of Bridgeport Police Department*, 613 F.3d 336, 340 (2d Cir.2010). Once this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011). "The nonmoving party cannot defeat summary judgment by simply show[ing] that there is some metaphysical doubt as to the material facts, or by a factual argument based on conjecture or surmise." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.2006) (internal quotation marks and citations omitted); *see Brown*, 654 F.3d at 358 (holding the nonmovant "may not rely solely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir.2003) (internal quotation marks and citation omitted) (alterations in original); *see also Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 ("the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment") (emphasis in original).

## B. Section 1983 Claims

 Section 1983 establishes liability for deprivation under the color of state law "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (citation omitted). "Section 1983 itself creates no substantive rights, it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional

rights—in other words, there is an injury requirement to state the claim."[5] *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (internal quotation marks and citation omitted). Moreover, a plaintiff must show the personal involvement of defendants in the alleged deprivation of his or her constitutional rights. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir.2006).

Plaintiff alleges Section 1983 claims for the deprivation of his First Amendment rights, deprivation of his equal protection rights, and deprivation of his due process rights against defendants.

### 1. First Amendment Retaliation

Plaintiff's first cause of action alleges that defendants suppressed his free speech by retaliating against him in violation of his federal constitutional rights. Second Amended Compl. ¶¶ 10, 72, DE [33]. Plaintiff avers that he was subjected to a campaign "designed to discourage plaintiff ... from observing and/or photographing and/or videotaping and/or making known to the public matters of public concern." *Id.* According to plaintiff, he sought to take photographs in an attempt "to document dangerous conditions for the public good." Pl.'s Mem. In Opp., at 5. Plaintiff maintains that he "has embarrassed the Village by documenting various hazards over the years, and now, if he is to approach a public roadway to take such photographs, [he] must run the risk of either (a) being issued a parking ticket if he stops his vehicle even for a moment, pulling completely off the roadway, putting his flashers on, and complying immediately with an officer's request he leave, or (b) being considered 'fair game' by Village

employees driving heavy equipment if he is seen standing or walking along the road so as to avoid the prospect of receiving a parking ticket. *Id.* The Court considers plaintiff's First Amendment retaliation claim in the context of the two incidents in which plaintiff claims that he was taking pictures at the time of defendants' improper actions, to wit, the Parking Ticket and the Swerving Truck events.

�In The elements of a First Amendment retaliation claim depend on the factual context of the underlying matter. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir.2008). Where, as here, a private citizen seeks to assert a claim for First Amendment retaliation against a public official, a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant[s'] actions were motivated or substantially caused by his exercise of that right; and (3) the defendant[s'] actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir.2013) (citation omitted); *see Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir.2001) (a private citizen alleging a First Amendment retaliation claim against a public official must show that "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment right"). "Various forms of harm have been accepted as satisfying this injury requirement in the context of a claim that a public official has injured the plaintiff in retaliation of [his or] her exercise of [his

---

**5.** Because plaintiff has not plead any personal involvement by defendants Thatcher, Flynn, Muller and John Does Nos. 1 and 2 in the alleged constitutional violations, plaintiff's claims against these defendants should be dismissed. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir.2001) ("direct partic-

ipation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal") (internal quotation marks and citation omitted).

or] her First Amendment rights." *Zherka*, 634 F.3d at 644. With respect to this third element, while it was once well-settled law that a private citizen who alleged retaliation for criticism of public officials had to "prove that ... [the] defendants' actions effectively chilled the exercise of [his or her] First Amendment right," *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004), the Second Circuit has recently clarified "that [c]hilled speech is not the *sine qua non* of a First Amendment claim," *Prince v. County of Nassau*, 563 Fed. Appx. 13, 17 (2d Cir.2014) (internal quotation marks and citation omitted). Thus, "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160 (emphasis in original).

Defendants move for summary judgment on plaintiff's First Amendment retaliation claim on the grounds that plaintiff cannot show that he was deprived of the freedom to exercise his First Amendment rights nor that any of the defendants acted against him in retaliation for his the exercise of his First Amendment rights. Defs.' Mem. In Supp., at 1, DE [47].

### a. The Parking Ticket

Plaintiff claims that his First Amendment rights were infringed on May 7, 2009, when he pulled his vehicle over to the side of Lloyd Harbor Road, engaged its emergency flashers, exited his vehicle to take a photograph of a utility pole that he felt posed a danger, and was issued a traffic ticket for illegal parking by Officer Morrissey. Second Amended Compl. ¶¶ 19, 24, DE [33].

The parties do not dispute that an individual may have a First Amendment interest in taking photographs to document unsafe conditions for the public good. That being said, a First Amendment interest in taking photographs does not provide an individual with blanket protection from the enforcement of traffic laws, which by their very nature, do not actually prohibit the taking of photographs. There is no evidence in the record that Officer Morrissey's actions were aimed at, or had the effect of, preventing plaintiff from taking photographs. To the contrary, Officer Morrissey's conduct in issuing a summons was directed at Bartels' non-expressive conduct, *viz.*, the illegal parking of his vehicle on Lloyd Harbor Road.

Nevertheless, it is well-established that for purposes of a First Amendment retaliation claim against a law enforcement officer, "if the officer either had probable cause or was qualifiedly immune from subsequent suit (due to an objectively reasonable belief that he had probable cause), then [the Court] will not examine the officer's underlying motive." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir.1995); *cf. Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir.2012) (holding that the existence of probable cause will "defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence [him]"). As relevant here, "[w]hen an officer observes a *traffic* offense [6]—however minor—he has probable cause to stop the driver of that vehicle." *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir.1994) (finding officers had probable cause to arrest defendant when officers directly observed defendant violating the traffic laws by failing to signal while changing lanes); *see Smart v. City of New York*, 08–CV–2203 (HB), 2009 WL

---

**6.** A traffic infraction is "the violation of ... any law, ordinance, rule or regulation regulating traffic which is not declared ... to be a

misdemeanor or a felony." N.Y. Veh. & Traf. Law § 155. "[A] traffic infraction shall be deemed an offense." *Id.*

862281, at *4 (S.D.N.Y. Apr. 1, 2009) (finding officers had probable cause to arrest the plaintiff where they observed him violating the traffic laws by double parking his vehicle facing the opposite direction of traffic).

 "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); *cf. Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 416–17 (2d Cir.1999). Even where factual disputes exist, a Section 1983 claim may fail if the plaintiff's version of the facts establishes probable cause. *See Mistretta v. Prokesch,* 5 F.Supp.2d 128, 133 (E.D.N.Y.1998). In determining whether there is probable cause, the motivation of the officer is "not a consideration." *Singer,* 63 F.3d at 119; *see Curley,* 268 F.3d at 73 ("As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken").

 Accepting Bartels' own version of events, as set forth in the amended complaint and his opposition papers, establishes that probable cause—or at least reasonable cause—existed for Officer Morrissey to issue the parking violation. While plaintiff argues that he was not actually "parked" since he was standing next to his vehicle and had engaged his emergency flashers when he exited the vehicle, his argument is unavailing. The New York State Vehicle and Traffic Law states that "when parking is prohibited ... no person shall park a vehicle, whether occupied or not, but may stop or stand temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers." N.Y. Veh. & Traf. Law § 1200. Plaintiff has made no representation that he was loading or unloading merchandise or passengers, and therefore his self-described actions that he "pulled over to the side of the road" in a no parking zone and exited his vehicle·so he could take pictures of the utility pole constituted a parking infraction under the traffic law. Officer Morrissey observed his conduct and issued the summons.

Finally, plaintiff's argument that the retention of a special prosecutor at a high cost to prosecute plaintiff's $25 traffic ticket was an act of retaliation that infringed his First Amendment rights likewise fails. The record shows that defendants hired a special prosecutor because there was a pending lawsuit against Village officials, including the Town Attorney Ritter, and thus defendant Ritter recused himself from the traffic violation proceedings. Moreover, as Bartels concedes, the special prosecutor was paid the same hourly rate as Ritter and the proceedings resulted in favor of plaintiff. Under these circumstances, plaintiff is unable to demonstrate a violation of his federally protected rights by defendants Morrissey and Ritter.

### b. The Swerving Truck

In *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), the Supreme Court was confronted with a summary judgment decision in a § 1983 case involving the alleged excessive use of force during a police car chase which resulted in serious injury to a plaintiff. As an initial matter, the Court observed:

> As this case was decided on summary judgment, there have not yet been factual findings by a judge or jury, and respondent's version of events (unsurprisingly) differs substantially from Scott's version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion."

*Id.* at 378, 127 S.Ct. 1769. However, the Court noted an "added wrinkle in this case," to wit: a dashboard videotape, included as part of the record on summary judgment, which "quite clearly contradicts the version of the story told by respondent." *Id.* The Court found:

> Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury.

*Id.* at 380, 127 S.Ct. 1769. Under such circumstances, the Court held:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.; see Marcavage v. City of New York,* 689 F.3d 98, 110 (2d Cir.2012) ("Although on summary judgment the evidence must be viewed in the light most favorable to Plaintiffs as the non-moving parties, when there is reliable objective evidence—such as a recording—the evidence may speak for itself"). *Kalfus v. New York & Presbyterian Hosp.,* 476 Fed.Appx. 877, 880 (2d Cir.2012) (upholding summary judgment in excessive force case based upon audio recording); *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir.2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party").

 Such is the case here. The photographs submitted—which were taken by plaintiff (so, as in *Scott,* there can be "no allegations or indications that this videotape was doctored or altered", 550 U.S. at 378, 127 S.Ct. 1769)—plainly belie plaintiff's contention that the truck driven by Madsen swerved in his direction; rather these photographs indisputably support defendants' testimony that the truck moved toward and slightly into the opposing lane of traffic to avoid striking the plaintiff. Under these circumstances, summary judgment is warranted.

**c. Conspiracy**

 Finally, to the extent that plaintiff's allegation that defendants "engag[ed] and/or participat[ed] in a campaign designed to discourage plaintiff" from engaging in activities protected by the First Amendment can be construed as asserting a Section 1983 conspiracy claim, such a claim is barred by the intra-corporate conspiracy doctrine. To prove a Section 1983 conspiracy claim, plaintiffs must demonstrate "(1) an agreement between two state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). "Under the intra-corporate conspiracy doctrine, officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Herzlich v. Nassau B.O.C.E.S.,* No. 12–CV–220 (SJF)(AKT), 2013 WL 5406607, at *14 (E.D.N.Y. Sept. 23, 2013) (internal quotation marks and citation omitted). Here, the only parties to the conspiracy would be the Village defendants who are all employees of a single municipal entity, viz. the Village. As such, plaintiff's conspiracy claim would be barred by the intra-corporate conspiracy doctrine. *See Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978); *see also*

*Straker v. N.Y. City Transit Auth.,* 340 Fed.Appx. 675, 677 (2d Cir.2009). Inasmuch as there is nothing in this record that even remotely suggests a First Amendment violation, plaintiff's claim cannot survive summary judgment against the individual defendants.

In sum, plaintiff has failed to raise a genuine issue of material fact that his First Amendment rights were violated by defendants, that defendants' conduct was in retaliation for plaintiff's exercise of his First Amendment rights or that the collective events were part of a conspiracy to suppress his free speech. Accordingly, summary judgment should be granted as to plaintiff's First Amendment claims.

### 2. Equal Protection

██ Plaintiff's second cause of action alleges that defendants violated his right to equal protection of the laws by instituting a *de facto* policy that selectively and aggressively prosecuted plaintiff whenever the opportunity arose (the parking ticket incident); refusing to bring criminal charges or disciplinary proceedings against Village employees who use Village property to commit tortious and criminal acts against plaintiff (the swerving truck incident); by threatening plaintiff with bodily harm in an attempt to prevent plaintiff from trespassing even where plaintiff's presence on the property was with the owners' permission (the invisible taser at the Bergh property incident); and threatening plaintiff with prosecution for trespassing based on his presence on common areas within Fiddlers Green Association (the trespass warning incident). Second Amended Comp. ¶¶ 74–76.

██ The Equal Protection Clause of the Fourteenth Amendment prohibits the government from denying "any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v.*

*Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting U.S. Const. amend. XIV). "[I]t is axiomatic that [to establish an equal protection violation] a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling,* 18 F.3d 188, 193 (2d Cir.1994); *see Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) ("The Equal Protection Clause requires that the government treat all similarly situated people alike"). The Second Circuit "has recognized that the Equal Protection Clause may be violated by selective enforcement or selective adverse treatment." *Bush v. City of Utica, N.Y.,* 558 Fed.Appx. 131, 134 (2d Cir.2014). A plaintiff may proceed under the Equal Protection Clause as either a "class of one," *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S:Ct. 1073, 145 L.Ed.2d 1060 (2000) (in light of the Clause's purpose to "secure every person within the State's jurisdiction against intentional or arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents," ... "successful equal protection claims [may be] brought by a class of one"), or under the theory of "selective enforcement," *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000). The Second Circuit has "described selective enforcement as a murky corner of equal protection law in which there are surprisingly few cases." *Id.* (internal quotation marks and citations omitted).

██ To succeed on a selective enforcement claim, a plaintiff must show: "(1) that he or she was treated differently from other similarly situated individuals, and (2) that the 'treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or mali-

cious or bad faith intent to injure a person'." *Bush*, 558 Fed.Appx. at 134 (quoting *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980)) (citation omitted). To succeed on a class of one equal protection theory, "the plaintiff must demonstrate that he was treated differently than someone who is prima facie identical in all relevant respects." *Prestopnik v. Whelan,* 249 Fed.Appx. 210, 213 (2d Cir.2007) (internal quotation marks and citations omitted). In addition, the plaintiff must show that "the defendant[s] intentionally treated [him] differently, with no rational basis." *Id.* (citations omitted).

Here, plaintiff has failed to show a claim under either equal protection theory. First, plaintiff has failed to demonstrate that, compared with other similarly situated persons, he was selectively treated, and in fact plaintiff fails to allege any comparators who received favorable treatment. Further, to the extent plaintiff alleges an equal protection violation based upon an impermissible consideration, *viz.*, to punish the exercise of his constitutional rights, such a claim is foreclosed by plaintiff's failure to establish a constitutional violation. For example, as discussed *supra*, plaintiff failed to establish that his First Amendment rights had been infringed during the parking ticket incident and the swerving truck incidents. To the contrary, the individual defendants involved in the four listed occurrences had a rational basis for their actions. With respect to the parking ticket occurrence, the officer had a rational basis for issuing the summons, namely, plaintiff was parked illegally. As to the swerving truck incident, as discussed above, the evidence demonstrated that the driver of the truck, Madsen, swerved away from the plaintiff to avoid striking him.

The circumstances involving the Bergh property incident show that Officers Morrissey and Donnaruma had a rational basis

for pursuing Bartels on the Bergh property, namely their belief that he was trespassing on private property. Although plaintiff claims he had a legal right to be there, there is no evidence in the record that this purported exculpatory information was known to the officers at the time of the encounter. *Cf. Curley*, 268 F.3d at 70 (explaining that officers are not required to "explore and eliminate every theoretical claim of innocence" before making an arrest). Moreover, plaintiff's allegation in the amended complaint that during this incident Officer Morrissey removed a taser from his holster and aimed it at plaintiff is belied by plaintiff's deposition testimony that Morrissey was "screwing around" with something on the left side of his belt, which plaintiff thought "was a cellphone." *Compare* Second Amended Compl., ¶ 6, DE [33], *with Weir Aff.*, Ex. B at 104, DE [46]. With respect to the trespass warning, there is evidence in the record that Officer O'Shaughnessy's alleged (albeit disputed) warning that his entry into any of the "common" areas of the Fiddlers Green Association would constitute a trespass was based on complaints made to the Police Department that plaintiff had not paid his Association dues and therefore should not enter the common areas. In short, plaintiff has failed to point to any evidence in the record that demonstrates that he was treated differently than other residents in Lloyd Harbor, that the different treatment was based on impermissible considerations or that the defendants treated him differently for no rational basis.

Finally, plaintiff has failed to establish the existence of a Village policy or custom that caused a violation of plaintiff's equal protection rights. Plaintiff's claim that the Village violated plaintiff's equal protection rights is based on the conduct set forth in the four encounters he had with Village employees. Inasmuch as the four instances both separately and in the aggregate

fail to constitute violations of his rights, he is unable to establish the existence of a *de facto* policy that violated his rights. Accordingly, summary judgment should be granted as to plaintiffs' equal protection claims.

### 3. Substantive Due Process

 Substantive due process guards a person's rights "against the government's 'exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Tenenbaum v. Williams,* 193 F.3d 581, 600 (2d Cir.1999) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 431 (2d Cir.2009) (quoting *Lewis,* 523 U.S. at 847 n. 8, 118 S.Ct. 1708). The interference with the plaintiff's protected right must be "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Tenenbaum,* 193 F.3d at 600; *see also Lewis,* 523 U.S. at 840, 118 S.Ct. 1708 (doctrine of substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them" (internal quotation marks omitted)). Where, as here, "a spe-cific act of a governmental officer that is at issue," the Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708 (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

 The only allegations by plaintiff that could even be reasonably considered against this standard are the purported attempted vehicular assault and, at least arguably, the brandishing of a taser by one of the defendant police officers. As already discussed, however, these allegations are flatly untrue. What remains involves the issuance of a parking ticket, an encounter in which the police "pursued" but did not arrest plaintiff for an apparent trespass on a residential property,[7] and a fourth incident in which O'Shaughnessy allegedly advised plaintiff in a telephone call to avoid entering the property of a neighborhood association. These incidents, taken separately or aggregately, cannot be said to "shock the judicial conscience" so as to run afoul of substantive due process rights. *See, e.g., Cotz v. Mastroeni,* 476 F.Supp.2d 332, 361 (S.D.N.Y. 2007) (where police threatened plaintiff with arrest and criminal charges, "yelled at and threatened plaintiff, banged on doors and windows and, on one occasion, forcibly entered her home without consent or a warrant" but "never arrested her,

---

7. There is a reasonable question as to whether this incident, which in substance appears to be something akin to an investigatory stop, should even be considered under the substantive due process standard, or rather should be analyzed under a Fourth Amendment framework. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more gen-eralized notion of "substantive due process," must be the guide for analyzing these claims"). Suffice it to say that because no force was exercised by the defendants in this circumstance, it would be impossible for plaintiff to meet the standard. *Id.* at 396, 109 S.Ct. 1865 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it").

physically touched her or coerced her to leave her home" such actions did not "rise to the level of a substantive due process violation"); *cf. Wood v. The Town of E. Hampton,* No. 08–CV–4197 (DRH)(AKT), 2014 WL 60087, at *14 (E.D.N.Y.2014) (collecting and comparing cases).

Accordingly, summary judgment should be granted as to plaintiff's substantive due process claims.

### 4. Municipal Liability

 Under Section 1983, a municipality can be found liable only where the municipality itself causes the constitutional violation at issue. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort"). That is, Section 1983 "imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights." *Okin,* 577 F.3d at 439 (internal quotation marks and citation omitted). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization, where the organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Id.* Thus, to hold the Village of Lloyd Harbor liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.,* 490 F.3d 189, 195 (2d Cir.2007) (internal quotation marks, citation and alterations omitted).

Because Bartels has failed to present any evidence that demonstrates his constitutional rights were violated by the individual Village employees, he cannot sustain a Section 1983 claim against the Village. *See Askins v. Doe No.1,* 727 F.3d 248, 253 (2d Cir.2013) ("[u]nless a plaintiff shows that he has been a victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable[;] *Monell* does not create a standalone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy"); *see also Kajoshaj v. New York City Dep't of Educ.,* 543 Fed.Appx. 11, 16–17 (2d Cir.2013) (plaintiffs' failure to plausibly plead that municipal employees violated their constitutional rights, the plaintiffs' *Monell* claim against the municipality "necessarily fails as well"); *Anaba v. County of Suffolk,* 2014 WL 1411770, at *10 (same).

Accordingly, summary judgment should be granted as to plaintiff's municipal liability claim.

### 5. Qualified Immunity

The individually named defendants assert that principals of qualified immunity further support the dismissal of plaintiff's claims against them.

 "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal quotation marks and citation omitted). "When a defendant officer charged with violations of federal constitutional rights invokes qualified immunity to support a motion for summary judgment, a court must first consider a threshold question: Do the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional

right? If the answer to this question is no, there is no necessity for further inquiries concerning qualified immunity." *Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir.2007) (internal quotation marks and citation omitted). "The reason for this rule is that, where there is no viable constitutional claim, defendants have no need of an immunity shield." *Id.; see also Farrell v. Burke,* 449 F.3d 470, 499 n. 14 (2d Cir. 2006) (holding that "[b]ecause we have found no cognizable violation of [plaintiffs'] rights in this case, we need not reach the question of qualified immunity"). Given that the Court finds that plaintiff's constitutional rights were not violated, the Court does not reach the issue of whether the individual defendants are entitled to qualified immunity.

## C. State Law Claim

The second amended complaint asserts a state law claims for the tort of assault for putting plaintiff "in reasonable fear of imminent bodily harm without legal justification." Second Amended Compl. at ¶¶ 79–80, DE [33].

■■■■ Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over" state law claims if, as here, "the district court has dismissed all claims over with it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see Delaney v. Bank of America Corp.,* 766 F.3d 163, 170 (2d Cir. 2014). "Dismissal of the state law claims, however, is not absolutely mandatory, and the authority of whether to retain or decline jurisdiction resides in the sound discretion of the Court." *Cinevert v. Varsity Bus Co.,* No. 12–CV–1223 (RRM)(VVP), 2014 WL 4699674, at *3 (E.D.N.Y. Sept. 22, 2014) (internal quotation marks and citations omitted); *see Delaney,* 766 F.3d at 170. "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the

values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.'" *Klein & Co. Futures, Inc. v. Bd. of Trade,* 464 F.3d 255, 262 (2d Cir.2006) (citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see Brzak v. United Nations,* 597 F.3d 107, 113–14 (2d Cir.2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.").

■■■■ Having dismissed all federal causes of action, I find that judicial economy, convenience, fairness and comity weigh against retaining supplemental jurisdiction over the remaining state law claims. Accordingly, the undersigned respectfully recommends that the district court decline to exercise supplemental jurisdiction over the remaining state law claim.

## II. Plaintiff's Cross–Motion to Amend

■■■■ Bartels seeks leave to, yet again, amend his complaint to include new allegations and incidents and two new defendants purportedly relating to his interactions with the Village and its employees and officials. *See* Proposed Third Amended Compl., DE [49–1]. Specifically, plaintiff seeks to file a Third Amended Complaint to add claims of equal protection, due process and malicious prosecution arising out of his prosecution for aggravated harassment in the second degree and to add two new Village defendants, Police Officer Guariglia and Maureen Dillner, a Village employee who performs administrative duties. *Id.* The alleged facts surrounding the new incident are as follows.

Plaintiff alleges that on April 29, 2013, Police Officer Guariglia and Maureen Dillner prepared a Misdemeanor Information charging Bartels with aggravated harassment in the second degree based on the allegation that on April 18, 2013, Bartels had left voice mail messages on a Village answering machine that Dillner felt were "harassing, threatening and demeaning in nature, placing [Dillner] in fear for her and her families [sic] safety." *Id.* ¶ 54. On March 11, 2014, the People of the State of New York formally withdrew their opposition to Bartels' motion to dismiss the misdemeanor charge, and the state court dismissed the charge on that same day. *Id.* ¶ 55. Plaintiff avers that the voice mail messages left on the Village answering machine by Bartels were in response to a physical assault upon plaintiff by Maureen Dillner's husband and son that occurred on April 6, 2013, and which is now the subject of a state-court action, captioned *Bartels v. Dillner,* Index No. 715/2014 (Supreme Court, County of Suffolk). *Id.* ¶ 56. In connection with plaintiff's Misdemeanor Information charge, a meeting was held at the police station of the Village where defendants Flynn, Ritter, Muller and possible other police officers urged an Assistant District Attorney to charge plaintiff with aggravated harassment in the second degree for having left the voice messages. *Id.* ¶ 57.

▮▮▮▮ Rule 15(a) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a). A motion to amend a pleading under Rule 15(a) should be denied, however,

"if there is an 'apparent or declared reason-such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.' " *Dluhos v. Floating and Abandoned Vessel Known as "New York," * 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *accord Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987). The Court has broad discretion to determine whether to grant a motion to amend based on the relevant factors. *See Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998).

In this case, however, Rule 15(a) does not provide the point of reference for the Court's analysis of plaintiff's motion to amend, given that the motion was filed several years after the expiration of the motion deadline set by the Court. *See* Scheduling Order, DE [15] (setting October 12, 2011 deadline for filing motion to amend). Moreover, this belated request comes well after the deadline for completion of discovery. *See* Electronic Order dated August 13, 2013 (extending discovery deadline to September 13, 2013).[8] Under the circumstances, Rule 16(b) of the Federal Rules of Civil Procedure is also implicated.

▮▮▮▮ Rule 16(b) requires the Court to enter a scheduling order that sets a deadline for motions to amend the pleadings, see Fed.R.Civ.P. 16(b)(1), (3)(A), and then

---

**8.** By Electronic Order dated July 17, 2013, the district court denied plaintiff's request to stay the instant action pending the then pending misdemeanor prosecution against Bartels, and gave plaintiff leave to alternatively seek an extension of time for discovery and to amend the complaint to include allegations about this prosecution, if it is dismissed, by application to the undersigned. *See* Electronic Order dated July 17, 2013. Significantly, the state court dismissed the prosecution on March 11, 2014, *see* Proposed Third Amended Compl. ¶ 55, Ex. 4, DE [491]; however, plaintiff waited for nearly four months before filing a motion to amend the complaint on July 1, 2014, DE [54].

dictates that the schedule "may be modified only for good cause," Fed.R.Civ.P. 16(b)(4). The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir.2000) (internal citations and quotation marks omitted). Thus, where a scheduling order has issued that fixes a deadline for asserting additional claims, a party seeking leave to amend its pleading after the expiration of the deadline must show "good cause" to modify the scheduling order. *See id.* at 339–41 ("despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause"); *see also New Yuen Fat Garments Factory Ltd. v. August Silk, Inc.*, 07 Civ. 8304(JFK), 2009 WL 1515696, at *2–4, 2009 U.S. Dist. LEXIS 45857, at *6–9 (S.D.N.Y. Jun. 1, 2009).

■ Good cause in this context "depends on the diligence of the moving party," *Parker*, 204 F.3d at 340, and, to satisfy the standard, the movant must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, *see Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir.2003). In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met. *See Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003); *see also Parker*, 204 F.3d at 340. Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline. *See Parker*, 204 F.3d at 340 (citing *In re Milk Products Antitrust Litigation*, 195 F.3d 430, 437 (8th Cir.1999); *Sosa v. Airprint Systems,*

*Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998); *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir.1992)); *cf. Estate of Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272(JFK), 2007 WL 3084977, at *4, 2007 U.S. Dist. LEXIS 78070, at *11 (S.D.N.Y. Oct. 19, 2007) (finding good cause standard satisfied where the moving party based its proposed amendment on evidence discovered subsequent to the expiration of the discovery deadline).

■ Even where the prejudice to the non-moving party "may well be minimal," a failure to show good cause can warrant denial of a motion to amend. *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No. 08 Civ. 3697, 2009 U.S. Dist. LEXIS 71608, 2009 WL 2432729, at *4 (S.D.N.Y. July 31, 2009), *aff'd*, 2010 U.S. Dist. LEXIS 19169, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010). Thus, to be entitled to amend their pleading, plaintiff must first show good cause for their failure to meet the amendment deadline set in the Court's Scheduling Order. Only if they are able to do so, would the Court need to consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend. *See Parker*, 204 F.3d at 340; *Estate of Ratcliffe*, 2007 WL 3084977, at *4, 2007 U.S. Dist. LEXIS 78070, at *11.

On this motion, plaintiff fails to establish good cause. Clearly, the procedural posture of this action reveals that the deadline to amend the complaint expired over three and a half years ago, discovery had closed nearly two years previously and defendants have moved for summary judgment. Plaintiff, no stranger to filing amended complaints in both this case and the prior action before this Court, and despite having been given the opportunity to amend the complaint to the undersigned if the misdemeanor prosecution in state court

was dismissed, waited nearly another four months after the state court dismissal to file the within motion. *See Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 368 (2d Cir.2003) (noting that courts should take a "hard line" when assessing such "excusable neglect;" a "failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect"); *see also Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F.Supp.2d 460, 462 (S.D.N.Y.2007) (noting that the Second Circuit "has consistently found prejudice and denied amendments where discovery has already been completed"). As the Second Circuit observed:

> We operate in an environment ... in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law. Judges, of course, make mistakes. We ... have sympathy for those who, through mistakes—counsel's inadvertence of their own—lose substantial rights in that way. And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on. But the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

*Silivanch,* 333 F.3d at 367–68 (citations omitted).

Here, plaintiff seeks to assert entirely new claims, against new defendants, premised on an entirely new set of circumstances and has given no explanation as to his delay in filing the motion to amend. Moreover, to the extent plaintiff argues that his new allegations regarding his prosecution were in retaliation for events set forth in the Second Amended Complaint or for the instant action against defendants, his argument is unavailing. The Proposed Third Amended Complaint alleges that his prosecution was related to a prior dispute between Dillner and plaintiff which is the subject of a separate state court litigation, not the instant action. *See* Proposed Third Amended Compl. ¶ 56. Having found no violations of plaintiff's constitutional rights, as discussed *supra,* and in light of the multiple opportunities for plaintiff to litigate his claims both separately and in the aggregate both in this case and in his previously filed and litigated lawsuit in this court with no findings of constitutional violations by defendants, leave to file another amendment to the complaint based on new claims (and defendants) is unwarranted. There comes a point in time where enough is enough, where the defendants become prejudiced by a continued litigation by amendment, and wherein it just might be time to call it a day. Such is the case at bar. Accordingly, plaintiff's motion to amend the complaint should be denied.

## CONCLUSION

Based upon the foregoing, it is respectfully recommended that defendants' summary judgment motion be granted, the plaintiff's cross-motion to amend be denied, and the action be dismissed in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court by March 3, 2015. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R.Civ.P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to March 3, 2015, the time period for filing objections. **Failure**

to file objections within this time period will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn,* 474 U.S. 140, 145, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.,* 517 F.3d 601, 604 (2d Cir.2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester,* 372 Fed. Appx. 147, 147–48 (2d Cir.2010) (same). Filed Feb. 18, 2015.