08-2799-cv
Brzak v. United Nations

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

———————

August Term, 2008

(Argued: May 29, 2009                    Decided: March 2, 2010)

Docket No. 08-2799-cv

————————————

CYNTHIA BRZAK, NASR ISHAK,

*Plaintiffs-Appellants*,

– v. –

UNITED NATIONS, KOFI ANNAN, RUND LUBBERS, WENDY CHAMBERLIN,

*Defendants-Appellees*.[*]

————————————

Before: LEVAL, POOLER, AND B.D. PARKER, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*) dismissing plaintiffs' claims for lack of subject-matter jurisdiction on the grounds that the United Nations is absolutely immune and its former employees who are the individual defendants are functionally immune. AFFIRMED.

---

[*] The Clerk of Court is directed to amend the official caption to conform to the listing of the parties stated above.

EDWARD PATRICK FLAHERTY, Schwab, Flaherty & Associes, Geneva, Switzerland, *for Plaintiffs-Appellees*.

DONALD FRANCIS DONOVAN, (Catherine M. Amirfar, Semra A. Mesulam, Natalie L. Reid, *on the brief*), Debevoise & Plimpton LLP, New York, New York, *for Defendant-Appellant United Nations*.

Barrington D. Parker, Circuit Judge:

Cynthia Brzak and Nasr Ishak appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*) dismissing claims against the United Nations and various United Nations officials. The complaint charges defendants with sex discrimination under several federal statutory and state common law theories. The district court dismissed the claims for lack of subject-matter jurisdiction on the grounds that the United Nations and the individual defendants enjoy absolute and functional immunity, respectively. *Brzak v. United Nations*, 551 F. Supp. 2d 313, 318 (S.D.N.Y. 2008); *see* Fed. R. Civ. P. 12(b)(1). On appeal, Brzak and Ishak challenge the findings of immunity and also contend that, if they are correct, the grants of immunity violate the Constitution. We affirm.

## BACKGROUND

Except as noted, the facts are not contested. Brzak is an American citizen who worked in Geneva, Switzerland, for the United Nations High Commissioner for Refugees ("UNHCR"). Ishak is a French and Egyptian national who also worked in Geneva for the UNHCR. Defendant Kofi Annan was formerly the Secretary-General for the United Nations, and worked in New York City. Defendant Lubbers was the United Nations High Commissioner for Refugees, and defendant Wendy

Chamberlin was a deputy to the Commissioner. Both worked in Geneva. Brzak contends that during the course of a meeting of UNHCR staff members in Geneva in 2003, Lubbers improperly touched her. On the advice of Ishak, Brzak filed a complaint against Lubbers with the United Nations' Office of Internal Oversight Services ("OIOS"). The OIOS issued a report confirming Brzak's complaint and recommending that the United Nations discipline Lubbers. Brzak alleges that Annan disregarded the finding and eventually exonerated Lubbers. Brzak then appealed through the United Nations' internal complaint adjustment process. The plaintiffs allege that, as a consequence of Brzak's complaint, and Ishak's assistance pursuing it, United Nations officials and employees retaliated against them by taking steps such as manipulating Brzak's work assignments and denying Ishak merited promotions.

The plaintiffs sued the United Nations and the individual defendants in the United States District Court for the Southern District of New York, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and various state common law torts (brought in federal court through supplemental jurisdiction). The United Nations formally returned the complaint to the American ambassador to the United Nations and moved to dismiss on the grounds of immunity, a motion supported by the United States Attorney's Office for the Southern District of New York. *Brzak*, 551 F. Supp. 2d at 316; *see* Letter of United States Attorney for the Southern District of New York, *Brzak v. United Nations*, 06-Civ. 3432 (S.D.N.Y., Oct. 2, 2007). The district court granted the motion. Judge Sweet concluded that the Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, *entered into*

*force with respect to the United States* Apr. 29, 1970, 21 U.S.T. 1418, (the "CPIUN"), granted the United Nations absolute immunity, which it had not waived, and dismissed the complaint. With regard to the individual defendants, Judge Sweet concluded that the CPIUN granted them the same form of functional immunity former diplomats enjoy under international law. This functional immunity, Judge Sweet held, applied to employment-related suits. *Brzak*, 551 F. Supp. 2d at 318-20. This appeal followed. We review *de novo* a district court's dismissal of a claim for lack of subject-matter jurisdiction. *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 241 (2d Cir. 2003). We also review *de novo* legal conclusions which grant or deny immunity. *Aurelieus Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009); *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009)**.**

**DISCUSSION**

As the District Court correctly concluded, the United States has ratified the CPIUN which extends absolute immunity to the United Nations. Specifically, the CPIUN provides that "[t]he United Nations . . . shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." *Id.* art. II, § 2. If the CPIUN applies, then appellants' claims fail. The answer to this question turns on whether the CPIUN is self-executing.

The parties do not dispute that the CPIUN is binding on the United States as a matter of international law. However, they disagree about whether American courts must recognize the immunity it adopts in domestic litigation. *Cf. Medellin v. Texas*, 552 U.S. 491, 504, 506 (2008) (acknowledging that an International Court of Justice opinion is binding on the United States as a matter of international law, while holding that the same opinion lacks domestic legal effect).

Brzak and Ishak contend that the CPIUN should not be enforced by American courts because it is not self-executing, and consequently cannot be enforced absent additional legislation which was never passed. *See Medellin*, 552 U.S. at 505. Whether a treaty is self-executing depends on whether "the treaty contains stipulations which . . . require no legislation to make them operative;" if so, "they have the force and effect of a legislative enactment." *Id.* at 505-06 (quoting *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)).

In determining whether a treaty is self-executing, we look to the text, the negotiation and drafting history, and the postratification understanding of the signatory nations. *Medellin*, 552 U.S. at 506-07. Additionally, the executive branch's interpretation of a treaty "is entitled to great weight." *Id.* at 513 (quoting *Sumitomo Shoji America, inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982)). Based on these criteria, we have little difficulty concluding that the CPIUN is self-executing.

CPIUN Section 34 states "[i]t is understood that, when an instrument of accession is deposited on behalf of any Member, the Member will be in a position under its own law to give effect to the terms of this convention." When the United States acceded to the CPIUN in 1970 (by the President's ratification, with the advice and consent of the Senate), it was affirming that it was "in a position under its own law to give effect" to the CPIUN's terms at that time. This means that the treaty became effective at ratification, and therefore, is self-executing. "[T]he label 'self-executing' usually is applied to any treaty that according to its terms takes effect upon ratification." *Mora v. New York*, 524 F.3d 183, 193 n.16 (2d Cir. 2008) (quoting *United States v. Li*, 206 F.3d 56, 67 (1st Cir. 2000) (en banc) (Selya & Boudin, JJ., concurring)).

The ratification history of the CPIUN reinforces this conclusion. During testimony before the Senate Foreign Relations Committee as it considered whether to recommend that the Senate ratify the CPIUN, the Legal Advisor to the State Department stated that: "It is clear from the language of the convention . . . that the convention is self-executing and no implementing legislation is necessary." S. Exec. Rep. No. 91-17, App. at 16 (Statement of John R. Stevenson, Legal Advisor, Department of State); *see also id.* at 13 ("I would like to have the record reflect[] that we regard the convention as self-executing."). The Foreign Relations Committee's report on the CPIUN also expressed the view that "the convention is self-executing and will require no implementing legislation." *Id.* at 5.

Finally, the executive branch continues to assert that the CPIUN is self-executing. *See* Letter of United States Attorney for the Southern District of New York, *Brzak v. United Nations*, 06-Civ. 3432 (S.D.N.Y., Oct. 2, 2007). These views, as we have seen, are entitled to "great weight." *Medellin*, 552 U.S. at 513; *Mora*, 524 F.3d at 204. Consequently, we hold that the CPIUN is self-executing and applies in American courts without implementing legislation.

As the CPIUN makes clear, the United Nations enjoys absolute immunity from suit unless "it has expressly waived its immunity." *Id.* art. II, § 2. Although the plaintiffs argue that purported inadequacies with the United Nations' internal dispute resolution mechanism indicate a waiver of immunity, crediting this argument would read the word "expressly" out of the CPIUN. The United Nations has not waived its immunity. *See* Letter from Nicolas Michel, United Nations Under-Secretary-General for Legal Affairs, to Alejandro D. Wolff, Deputy Permanent Representative of the United States of America to the United Nations (May 15, 2006); Letter from Nicolas Michel, United

Nations Under-Secretary-General for Legal Affairs, to John R. Bolton, Permanent Representative of the United States, to the United Nations (Oct. 19, 2006). Consequently, the United Nations enjoys absolute immunity and the district court's decision to dismiss the claims against the United Nations was correct.

Our conclusion is further confirmed by the International Organizations Immunities Act of 1945, 22 U.S.C. § 288a(b) (the "IOIA"), which provides that international organizations designated by the President should receive the "same immunity from suit and every form of judicial process as is enjoyed by foreign governments." The United Nations has been so designated. *See* Exec. Ord. No. 9698, 11 Fed. Reg. 1809 (Feb. 19, 1946). The plaintiffs argue that designated international organizations no longer have absolute immunity in all cases, because, since that act was passed, Congress has passed the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602-11("FSIA"), which strips foreign sovereigns of their immunity in certain circumstances. Plaintiffs argue that it is this narrower definition of sovereign immunity that now defines what sort of immunity the IOIA applies to international organizations. Although this argument has been rejected by at least one other Court of Appeals, *see Atkinson v. Inter-American Dev. Bank*, 156 F.3d 1335, 1340-42 (D.C. Cir. 1998), we need not resolve whether plaintiffs' argument is correct for at least two reasons. The first is that, whatever immunities are possessed by other international organizations, the CPIUN unequivocally grants the United Nations absolute immunity without exception. The second is that the plaintiffs have not presented any argument, either at the district level or to us, which would suggest that one of FSIA's exceptions to immunity would apply. Therefore, even under the plaintiffs' interpretation of the IOIA, the United Nations would still be immune from suit.

The plaintiffs also sued three former United Nations officials. The CPIUN also addresses their immunity: "The Secretary-General and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law." *Id.* art. v, sect. 19. As we have determined above that the CPIUN is a self-executing treaty, this provision is binding on American courts. International law provides extensive protection for diplomatic envoys. *See* The Vienna Convention on Diplomatic Relations, Apr. 18, 1961, *entered into force with respect to the United States Dec.* 13, 1972, 23 U.S.T. 3227 (the "VCDR"). Although current diplomatic envoys enjoy absolute immunity from civil and criminal process, *see id.* art. 31, former diplomatic envoys retain immunity only "with respect to acts performed by such a person in the exercise of his functions" as a diplomatic envoy. *Id.* art. 39, para. 2. As the plaintiffs have sued former United Nations officials, each of whom held a rank of Assistant Secretary-General or higher, it is this functional immunity, which the CPIUN incorporates by reference, that is relevant. The Diplomatic Relations Act of 1978, 22 U.S.C. § 254d, makes pellucid that American courts must dismiss a suit against anyone who is entitled to immunity under either the VCDR or other laws "extending diplomatic privileges and immunities." As CPIUN section 19 is such a law, the remaining question is whether the plaintiffs' allegations against the individual defendants involve acts that the defendants performed in the exercise of their United Nations functions.

When a court attempts to determine whether a defendant is seeking immunity "with respect to acts performed by such a person in the exercise of his functions," VCDR art. 39, para. 2, the court must do so without judging whether the underlying conduct actually occurred, or whether it was

8

wrongful.[**] Of the plaintiffs' seven claims, all except the fourth make allegations with respect to acts that the defendants performed in exercise of their official functions, namely, their management of the office in which the plaintiffs worked. The first two claims allege that defendants discriminated against Brzak in the conditions of her employment and retaliated against her, both in violation of Title VII. The fifth claim alleges that the defendants retaliated against Ishak in violation of Title VII as well. These allegations involve personnel management decisions falling within the ambit of the defendants' professional responsibilities. Brzak's third claim, for intentional infliction of emotional distress, also relates to the management of the office, because it challenges the defendants' conduct in investigating Brzak's claims, and charges retaliation through changes of her work assignments. The sixth and seventh claims, which allege violations of RICO, also relate to Annan's and Lubbers' roles as United Nations officials.

The only remaining claim is the fourth, in which Brzak alleges Lubbers committed the state law tort of battery. We have said that if a plaintiff's federal claims are dismissed before trial, "the state claims should be dismissed as well." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Because Bzrak's federal claims were dismissed on jurisdictional grounds at the very beginning of the case, there was no colorable basis for the district court to exercise supplemental jurisdiction over her state law claim. We thus affirm the district court's dismissal without reaching Bzrak's argument that the claim involves conduct outside the scope of the defendant's immunity. Bzrak is free to re-

---

[**]This test parallels the objective tests we have adopted in applying other forms of immunity. For instance, a prosecutor is immune from suit under 42 U.S.C. § 1983 "for virtually all acts . . . associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). In applying that functional test, we have looked to the objective acts of the prosecutor in question, not to the type of injury alleged. *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996).

9

file her battery claim in the state courts. If she does so, the state court would need to adjudicate in the first instance the defendant's claim of immunity.

The appellants raise several constitutional objections to the proposition that the United Nations and its former officials enjoy immunity. Specifically, they contend that such a grant of immunity would violate their procedural due process right to litigate the merits of their case, their substantive due process right to access the courts, their First Amendment right to petition the government for redress of grievances, and their Seventh Amendment right to a jury trial on their common law claims. Each of these arguments fails, as each does no more than question why immunities in general should exist.

The short – and conclusive – answer is that legislatively and judicially crafted immunities of one sort or another have existed since well before the framing of the Constitution, have been extended and modified over time, and are firmly embedded in American law. *See, e.g.*, Act for the Punishment of Certain Crimes Against the United States, 25, 1 Stat. 112, 117-18 (1790) (diplomatic immunity)*; The Schooner Exchange v. McFadden*, 11 U.S. (7 Cranch) 116 (1812) (foreign sovereign immunity); *Tenney v. Brandhove*, 341 U.S. 367, 376-77 (1951) (legislative immunity); *Barr v. Matteo*, 360 U.S. 564, 573 (1959) (plurality) (executive official immunity); *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (prosecutorial immunity); *National City Bank of New York v. Republic of China*, 348 U.S. 356, 358-60 (1955) (discussing the history of foreign sovereign immunity since *Schooner Exchange*); *See generally* Linda S. Frey & Marsha L. Frey, The History of Diplomatic Immunity (1999) (tracing the concept of diplomatic immunity from ancient Greek society forward to the twentieth century). If

appellants' constitutional argument were correct, judicial immunity, prosecutorial immunity, and legislative immunity, for example, could not exist. Suffice it to say, they offer no principled arguments as to why the continuing existence of immunities violates the Constitution.

**CONCLUSION**

The judgment of the district court is affirmed.