13-3688-cv
*Hollis v. O'Driscoll*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2013
No. 13-3688-cv

JOHN MATTHEW HOLLIS,
*Petitioner-Appellee.*

*v.*

OLIVIA SKYE O'DRISCOLL,
*Respondent-Appellant.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 13 CV 1955 (AJN) — Alison J. Nathan, *Judge*.

————

ARGUED: DECEMBER 10, 2013
DECIDED: JANUARY 7, 2014

————

Before: CABRANES, WESLEY and LIVINGSTON, *Circuit Judges*.

————

In this appeal we consider whether the United States District Court for the Southern District of New York (Alison J. Nathan, *Judge*) erred in granting the petition of John Matthew Hollis for the return of his daughter, H.L.O., from New York to New Zealand, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, and its implementing legislation, the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq.*

We hold that the District Court did not err in concluding that: (1) New Zealand was H.L.O.'s habitual residence prior to removal, notwithstanding a lack of stable accommodations during a significant portion of her time there; (2) H.L.O.'s indefinite removal by her mother Olivia Skye O'Driscoll from New Zealand to New York was contrary to the parties' last shared intent and, therefore, wrongful; and (3) H.L.O. had not "acclimated" to life in New York such that it was the equivalent of a new habitual residence. Accordingly, we **AFFIRM** the September 4, 2013 judgment of the District Court and **REMAND** the cause for further proceedings, including a determination of whether to award costs to Hollis.

————

PHILIP C. SEGAL, Segal & Greenberg LLP, New York, NY, *for Petitioner-Appellee*

EDWARD D. ALTABET (Sean T. Haran, *on the brief*), Nixon Peabody LLP, New York, NY, *for Respondent-Appellant*

————

JOSÉ A. CABRANES, *Circuit Judge*:

In this appeal we consider whether the United States District Court for the Southern District of New York (Alison J. Nathan, *Judge*) erred in granting the petition of John Matthew Hollis for the return of his daughter, H.L.O., from New York to New Zealand, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (the "Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq.* ("ICARA").

Appellant Olivia Skye O'Driscoll argues on appeal that the District Court erred in concluding that: (1) H.L.O. was a habitual resident of New Zealand immediately prior to her removal to New York by her mother O'Driscoll; (2) Hollis did not consent to H.L.O's indefinite removal to New York; and (3) H.L.O. had not acclimated to her residence in New York such that it had become a new habitual residence.

## BACKGROUND[1]

Hollis and O'Driscoll are both citizens of New Zealand, where they lived when their relationship began in January 2010. After O'Driscoll became pregnant with H.L.O. in March 2010, the two became engaged and lived together in Auckland, New Zealand in the months leading up to H.L.O.'s birth in December 2010, and for the first five months of H.L.O.'s life.

In May 2011, the relationship began to deteriorate. Around that time, Hollis and O'Driscoll each moved separately to Tauranga, New Zealand, and they never lived together again. After moving to

---

[1] Unless otherwise noted, the facts set forth below are taken from the District Court's opinion and are not disputed by the parties on appeal.

Tauranga, O'Driscoll and H.L.O. did not have their own apartment, but instead "stayed in various guest bedrooms and on various couches." Appellant's Br. 34. In October 2011, O'Driscoll spent two months in Japan with H.L.O. working as a model, after which she returned to New Zealand.

In early January 2012, although still living separately, O'Driscoll and Hollis spent time together with H.L.O., and Hollis had expressed a desire to reconcile. When O'Driscoll raised the possibility of re-launching her modeling career in New York, Hollis indicated that he would consent to such a move on the assumption that he would also move to New York to be with O'Driscoll and H.L.O. In February 2012, after the relationship deteriorated further and O'Driscoll made clear that they would not reconcile, Hollis indicated that he did not consent to O'Driscoll moving to New York with H.L.O., and he raised the possibility of commencing a Hague Convention action if she did.

Hollis eventually agreed that O'Driscoll could take H.L.O. to New York, but only on the condition that she would stay there for no longer than four or five months. Despite this apparent agreement, O'Driscoll remained concerned that Hollis did not consent to her taking H.L.O. to New York without him. As a result, O'Driscoll lied to Hollis about her departure date, informing him that he would have a "play date" with H.L.O. on March 7, 2012, but instead departing with H.L.O. on a plane for New York that same day.

When O'Driscoll did not return to New Zealand in August 2012, Hollis contacted the New Zealand central authority to initiate a Hague Convention proceeding. The attorney assigned to Hollis promptly notified O'Driscoll that she must return H.L.O. to New Zealand, but O'Driscoll did not comply, resulting in commencement of the present action on March 25, 2013.

On September 4, 2013, the District Court issued its decision ordering repatriation of H.L.O. to New Zealand. At that time, O'Driscoll and H.L.O had been living in New York for eighteen months, during which they had lived in three different locations, finally settling in Long Island City. H.L.O. had developed a close relationship with her nanny of one year, and participated in a play group once a week in Battery Park City.

This timely appeal followed.

## DISCUSSION

### A. Removal

In cases arising under the Hague Convention and ICARA, "we review a district court's factual findings for clear error and its legal conclusions *de novo*." *Guzzo v. Cristofano*, 719 F.3d 100, 109 (2d Cir. 2013). We "accept the trial court's findings unless we have a definite and firm conviction that a mistake has been committed." *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013) (internal quotation marks omitted).

To succeed on a petition for repatriation of a child under the Hague Convention, the petitioner must prove that the child was removed from a State party[2] in which she was "habitually resident," and that the removal was "wrongful." *Mota v. Castillo*, 692 F.3d 108, 112 (2d Cir. 2012). Removal is "wrongful" if:

---

[2] Whereas "a State's *signing* of a treaty serves only to authenticate its text, [and] does not establish the signatory's consent to be bound," *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 256 (2d Cir. 2003) (emphasis in original) (internal quotation marks, citation, and alterations omitted), a State *party* is one which ratifies, and thus becomes bound by, the treaty in question, *Blue Ridge Investments, L.L.C. v. Republic of Argentina*, 735 F.3d 72, 84 n.20 (2d Cir. 2013).

[(1)] it is in breach of rights of custody . . . under the law of the State in which the child was habitually resident immediately before the removal . . . ;[3] and [(2)] at the time of removal . . . those rights were actually exercised [by the petitioner], . . . or would have been so exercised but for the removal . . . .

*Gitter v. Gitter*, 396 F.3d 124, 130 (2d Cir. 2005) (quoting Hague Convention, art. 3).[4]

The District Court correctly stated that, "in determining a child's habitual residence, a court must first 'inquire into the shared intent of those entitled to fix the child's residence . . . at the [last] time that their intent was shared.'" Special App'x at 8 (quoting *Gitter*, 396 F.3d at 134, alterations in original).

As a preliminary matter, O'Driscoll's argument that New Zealand cannot have been H.L.O.'s habitual residence because H.L.O. did not have a stable home after O'Driscoll separated from Hollis in May 2011 is unavailing. The purpose of the habitual-residence inquiry under the Hague Convention is to determine which State's laws should govern the custody dispute. Accordingly, the inquiry is limited to the "*country* of habitual residence," *Mota*, 692 F.3d at 112 (emphasis supplied), not whether the accommodations within the country were stable. Moreover, placing

---

[3] Under New Zealand law, the question of custody turns on whether the parents have a *de facto* relationship. The District Court determined that Hollis had custody rights in H.L.O. because he was living with O'Driscoll between the time of H.L.O's conception and her birth, and because of the nature of the parents' relationship prior to O'Driscoll's departure for New York in March 2012. O'Driscoll did not seriously contest this determination at trial and does not raise it on appeal.

[4] Although the respondent may rebut the petitioner's *prima facie* case of wrongful removal with affirmative defenses, O'Driscoll does not attempt to do so here.

weight on the stability of a child's accommodations would require us to delve into the merits of the underlying custody claim—a matter beyond the scope of this Court's authority in resolving Hague Convention claims. *See* 42 U.S.C. § 11601(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.").

In this case, Hollis and O'Driscoll lived together in New Zealand for approximately nine months prior to H.L.O.'s birth and for the first six months of H.L.O.'s life, and they considered New Zealand home. That O'Driscoll and H.L.O. did not have stable accommodations after O'Driscoll and Hollis separated does not affect, much less negate, the clear establishment of their habitual residence in New Zealand.[5] *Cf. Delvoye v. Lee*, 329 F.3d 330, 333 (3d Cir. 2003) ("[T]he mere fact that conflict has developed between the parents does not *ipso facto* disestablish a child's habitual residence, once it has come into existence.").

In addition, O'Driscoll argues that, even if New Zealand was H.L.O.'s habitual residence, Hollis consented to her moving to the United States with H.L.O. indefinitely. Based on the evidence adduced at trial, the District Court disagreed, determining that even though the parties had, at one point, anticipated moving to the United States together, their shared intent at the time of removal was for O'Driscoll to bring H.L.O. to New York for no longer than five months. This finding was based on, *inter alia*, an email from O'Driscoll stating that her stay in New York would last no longer

---

[5] We need not consider the possibility of a case arising in which a child's accommodations within a State were so unsettled that it could not be said that the parents shared the intent to make that State their habitual residence. This is not such a case.

than four months with a temporary return to New York for Fashion Week and O'Driscoll's attempt to deceive Hollis regarding her departure for New York with H.L.O. We have recognized that the determination of a habitual residence is a "fact-intensive [one] that necessarily varies with the circumstances of each case." *Guzzo*, 719 F.3d at 109 (internal quotation marks omitted). We cannot conclude that the District Court's determination here was erroneous, much less clearly erroneous.

Nor did the District Court err in determining that H.L.O.'s one-year relationship in New York with a nanny and enrollment in a weekly play group did not amount to "acclimation," such that, "notwithstanding a lack of shared parental intent to change the child's long-term residence," New York had become the equivalent of "home."[6] *Id.* at 111 (internal quotations omitted).

In sum, the District Court made no error of law or fact in concluding that H.L.O. was wrongfully removed from New Zealand, the state of her habitual residence, and ordering repatriation to that State.

## B. Costs

Hollis argues that if we affirm the judgment of the District Court, he is presumptively entitled to recover from O'Driscoll expenses, costs, and legal fees incurred in prosecuting this action in the District Court and on appeal.[7] ICARA requires the "court ordering the return of a child" to order the respondent to pay these

---

[6] O'Driscoll's arguments regarding her own family ties and greater ability to support H.L.O. in New York, are not germane to the repatriation inquiry, which is expressly not "a determination on the merits of any custody issue." *Souratgar*, 720 F.3d at 102.

[7] O'Driscoll does not address the request for costs in her Reply Brief.

costs unless "such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3); *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013). The District Court, as the court ordering the return of the child, is responsible in the first instance for determining what costs, if any, should be assessed against O'Driscoll, with respect to both the District Court and Court of Appeals proceedings. *See Ozaltin*, 708 F.3d at 377 ("[T]he District Court is in a better position to assess . . . an appropriate fees award."); *cf. McCarthy v. Bowen*, 824 F.2d 182, 183 (2d Cir. 1987) (holding, in the context of the Equal Access to Justice Act, 28 U.S.C. § 2412 (1987), that, although the application for appellate fees must be made in the Court of Appeals, "[t]here may be situations where the court of appeals will find it helpful to enlist the aid of the district court in resolving disputed issues concerning an application for appellate fees").[8]

Accordingly, we remand the cause for consideration of whether it is appropriate to award costs to Hollis, and if so, in what amount.

## CONCLUSION

To summarize, we hold that:

(1) New Zealand was H.L.O.'s habitual residence immediately prior to her removal to New York.

---

[8] Notably, the Equal Access to Justice Act states that "a court shall award to a prevailing party . . . fees and other expenses," 28 U.S.C. § 2412(d)(1)(A), without referring specifically to "the court ordering the return of the child," as in 42 U.S.C. § 11607(b)(3). This difference supports the conclusion that, under the Hague Convention, the district court is responsible, in the first instance, for the award of all costs.

(2) Hollis had some custody rights in H.L.O., and did not consent to O'Driscoll taking H.L.O. to New York indefinitely. Therefore, the removal was wrongful.

(3) H.L.O. had not "acclimated" to life in New York such that it was the equivalent of a new habitual residence.

(4) The District Court should determine, in the first instance, whether to order O'Driscoll to pay Hollis the costs associated with bringing this action in the District Court and on appeal.

Accordingly, we **AFFIRM** the September 4, 2013 judgment of the District Court and **REMAND** the cause to the District Court for further proceedings, including determining whether (and, if appropriate, in what amount) to award costs.