15-455-cv
*Georges v. United Nations*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2015
No. 15-455-cv

DELAMA GEORGES, individually and on behalf of the ESTATE OF
DESILUS GEORGES and all others similarly situated; ALIUS JOSEPH,
individually and on behalf of the ESTATE OF MARIE-CLAUDE LEFEUVE
and all others similarly situated; LISETTE PAUL, individually and on
behalf of the ESTATE OF FRITZNEL PAUL and all others similarly
situated; FELICIA PAULE, individually and on behalf of all others
similarly situated; JEAN RONY SILFORT, individually and on behalf of
all others similarly situated,
*Plaintiffs-Appellants*,

v.

UNITED NATIONS; UNITED NATIONS STABILIZATION MISSION IN HAITI;
EDMOND MULET, former Under-Secretary-General of the United
Nations Stabilization Mission in Haiti; BAN KI-MOON, Secretary-
General of the United Nations,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of New York

Before: CABRANES, PARKER, and LYNCH, *Circuit Judges*.

On appeal from the January 15, 2015 judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*) dismissing plaintiffs' action for lack of subject matter jurisdiction under the Convention on the Privileges and Immunities of the United Nations (the "CPIUN"), Apr. 29, 1970, 21 U.S.T. 1418.

The principal question presented by this appeal is whether the UN's fulfillment of its obligation under Section 29 of the CPIUN to "make provisions for appropriate modes of settlement of . . . disputes arising out of contracts or other disputes of a private law character to which the [UN] is a party," as well as "disputes involving any official of the [UN] who by reason of his official position enjoys immunity, if immunity has not been waived by the Secretary-General," is a condition precedent to its immunity under Section 2 of the CPIUN, which provides that the UN "shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."

Because we hold that the UN's fulfillment of its Section 29 obligation is not a condition precedent to its Section 2 immunity—and because we find plaintiffs' other arguments unpersuasive—we **AFFIRM** the District Court's judgment.

BEATRICE LINDSTROM (Brian Concannon, *on the brief*), Institute for Justice & Democracy in Haiti, Boston, MA, for *Plaintiffs-Appellants.*

Ira Kurzban, Kurzban Kurzban Weinger Tetzeli & Pratt P.A., Miami, FL, for *Plaintiffs-Appellants.*

Jeffrey Brand, Center for Law & Global Justice, University of San Francisco School of Law, San Francisco, CA, for *Plaintiffs-Appellants*.

ELLEN BLAIN (Jeannette Vargas, *on the brief*), Assistant United States Attorneys, for Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, for *Amicus Curiae the United States of America.*

Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Sharon Swingle, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for *Amicus Curiae the United States of America*.

Mary E. McLeod, Principal Deputy Legal Adviser, and Henry Azar, Jr., Attorney

3

Adviser, United States Department of State, Washington, DC, for *Amicus Curiae the United States of America*.

———

JOSÉ A. CABRANES, *Circuit Judge*:

The principal question presented by this appeal is whether the fulfillment by the United Nations ("UN") of its obligation under Section 29 of the Convention on Privileges and Immunities of the United Nations (the "CPIUN"), Apr. 29, 1970, 21 U.S.T. 1418, to "make provisions for appropriate modes of settlement of" certain disputes[1] is a condition precedent to its immunity under Section 2 of the CPIUN, which provides that the UN "shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity,"[2] such that the

---

[1] Section 29 reads as follows:

The [UN] shall make provisions for appropriate modes of settlement of

> (a) disputes arising out of contracts or other disputes of a private law character to which the [UN] is a party;

> (b) disputes involving any official of the [UN] who by reason of his official position enjoys immunity, if immunity has not been waived by the Secretary-General.

CPIUN art. VIII, § 29.

[2] *Id.* art. II, § 2.

4

UN's alleged disregard of its Section 29 obligation "compel[s] the conclusion that the UN's immunity does not exist."[3]

We hold that the UN's fulfillment of its Section 29 obligation is not a condition precedent to its Section 2 immunity. For this reason—and because we find plaintiffs' other arguments unpersuasive—we **AFFIRM** the January 15, 2015 judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*) dismissing plaintiffs' action against defendants the UN, the UN Stabilization Mission in Haiti ("MINUSTAH"), UN Secretary-General Ban Ki-moon ("Ban"), and former MINUSTAH Under-Secretary-General Edmond Mulet ("Mulet") for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiffs are citizens of the United States or Haiti who claim that they "have been or will be sickened, or have family members who have died or will die, as a direct result of the cholera" epidemic that has ravaged the Republic of Haiti since October 2010.[4] In this putative class action, plaintiffs seek to hold defendants responsible for their injuries, and to that end, assert various causes of action sounding in tort and contract against them.[5]

---

[3] Pls.' Br. 26.

[4] *See* A-17–18.

[5] A-66–78.

Specifically, plaintiffs allege that, in October 2010, "[d]efendants knowingly disregarded the high risk of transmitting cholera to Haiti when . . . they deployed personnel from Nepal to Haiti, knowing that Nepal was a country in which cholera is endemic and where a surge in infections had just been reported."[6] According to plaintiffs, defendants not only failed to test or screen these Nepalese personnel prior to their deployment, allowing them to carry into Haiti the strain of cholera that is the epidemic's source; they also stationed them at a base on the banks of the Meille Tributary, which flows into the Artibonite River, the primary water source for "tens of thousands" of Haitians.[7] From this base, defendants allegedly "discharged raw sewage" and "disposed of untreated human waste," which "created a high risk of contamination."[8] Eventually, plaintiffs contend, "human waste from the base seeped into and contaminated the Meille Tributary" and, ultimately, the Artibonite River, "resulting in explosive and massive outbreaks of cholera . . . throughout the entire country."[9]

Defendants did not enter an appearance before the District Court. But on March 7, 2014, the executive branch of the United States government (the "Executive Branch") submitted a statement

---

[6] A-16.

[7] *See id.*

[8] A-16–17.

[9] A-17. Developments surrounding these allegations remain ongoing. *See, e.g.*, Jonathan M. Katz, *Facing Stern Report, U.N. Admits Role in Haiti Cholera Outbreak*, N.Y. Times, Aug. 18, 2016, at A1.

of interest pursuant to 28 U.S.C. § 517, in which it took the position that defendants are "immune from legal process and suit" pursuant to the UN Charter, June 26, 1945, 59 Stat. 1031; the CPIUN; and the Vienna Convention on Diplomatic Relations (the "VCDR"), Apr. 18, 1961, 23 U.S.T. 3227.[10]

The District Court agreed with the Executive Branch. Accordingly, on January 9, 2015, it dismissed plaintiffs' action for lack of subject matter jurisdiction.[11] With respect to the UN and MINUSTAH, the District Court relied on Section 2 of the CPIUN. To reiterate, Section 2 provides that the UN "shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."[12] The District Court reasoned that, because "no party contend[ed] that the UN ha[d] expressly waived its immunity," the UN was "immune from [p]laintiffs' suit."[13] With respect to Ban and Mulet, the District Court relied on Article 31 of the VCDR, which provides that "[a] diplomatic agent shall enjoy immunity . . . from [a receiving State's] civil and

---

[10] Executive Branch Statement of Interest at 1, *Georges v. United States*, No. 13-CV-7146 (JPO) (S.D.N.Y. Mar. 7, 2014), ECF No. 21. Section 517 provides that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

[11] *See Georges v. United Nations*, 84 F. Supp. 3d 246, 247 (S.D.N.Y. 2015).

[12] CPIUN art. II, § 2.

[13] *Georges*, 84 F. Supp. 3d at 249.

administrative jurisdiction," except in circumstances undisputedly not presented here.[14] The District Court concluded that, because Ban and Mulet both held diplomatic positions at the time plaintiffs filed their action, they were immune as well.[15]

Plaintiffs timely appealed.[16] Defendants did not enter an appearance before this Court either, but the Executive Branch "submit[t]ed an *amicus curiae* brief, pursuant to 28 U.S.C. § 517 . . . , in [their] support."[17]

## DISCUSSION

Under principles of long standing, "[w]hen this Court reviews the dismissal of a complaint for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."[18]

On appeal, plaintiffs raise three principal arguments. First, they argue that the District Court erred in holding that the UN and

---

[14] VCDR art. 31.

[15] *See Georges*, 84 F. Supp. 3d at 250.

[16] *See* A-502–03.

[17] Letter on Behalf of Amicus Curiae United States of America at 1, *Georges v. United Nations*, No. 15-455-cv (2d Cir. June 29, 2015), ECF No. 179; *see also* Brief for Amicus Curiae United States of America, *Georges v. United Nations*, No. 15-455-cv (2d Cir. Aug. 27, 2015), ECF No. 199 ("Government's Br.").

[18] *Mantena v. Johnson*, 809 F.3d 721, 727 (2d Cir. 2015) (internal quotation marks omitted).

8

MINUSTAH are immune because the UN's fulfilment of its obligation under Section 29 of the CPIUN to provide for appropriate dispute-resolution mechanisms is a condition precedent to its Section 2 immunity.[19] Second, they argue that the District Court's holding was in error because the UN materially breached the CPIUN by failing to fulfill its Section 29 obligation, such that it is no longer entitled to the benefit of immunity under Section 2. Third, they argue that the District Court's application of the CPIUN to dismiss their action violated their constitutional right of access to the federal courts. We address each argument in turn.

## I. Condition Precedent

Plaintiffs' first argument requires us to interpret the CPIUN, so we begin by describing the framework that governs any such inquiry. "The interpretation of a treaty, like the interpretation of a statute, begins with its text,"[20] and "[w]here the language of . . . [a] treaty is plain, a court must refrain from amending it because to do

---

[19] As discussed above, Section 29 requires the UN to "make provisions for appropriate modes of settlement of . . . disputes arising out of contracts or other disputes of a private law character to which the [UN] is a party," as well as "disputes involving any official of the [UN] who by reason of his official position enjoys immunity, if immunity has not been waived by the Secretary-General." CPIUN art. VIII, § 29.

[20] *Abbott v. Abbott*, 560 U.S. 1, 10 (2010) (internal quotation marks omitted); *accord United States v. Alvarez-Machain*, 504 U.S. 655, 663 (1992) ("In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning.").

9

so would be to make, not construe, a treaty."[21] Additionally, because "[a]s a general matter, a treaty is a contract . . . between nations," it is "to be interpreted upon the principles which govern the interpretation of contracts in writing between individuals."[22] Further, "while the interpretation of a treaty is a question of law for the courts, given the nature of the document and the unique relationships it implicates, the Executive Branch's interpretation of a treaty is entitled to great weight."[23]

---

[21] *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 457 (2d Cir. 2003); *see Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 32 (2004) ("Where the words of a . . . treaty . . . have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded." (brackets and internal quotation marks omitted)); *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134 (1989) ("We must . . . be governed by the text[,] . . . whatever conclusions might be drawn from the . . . drafting history . . . .").

[22] *BG Grp., PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1208 (2014) (brackets and internal quotation marks omitted); *see Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 533 (1987) ("In interpreting an international treaty, we are mindful that it is in the nature of a contract between nations, to which general rules of construction apply." (citation, brackets, and internal quotation marks omitted)).

[23] *Lozano v. Alvarez*, 697 F.3d 41, 50 (2d Cir. 2012) (internal quotation marks omitted), *aff'd sub nom. Lozano v. Montoya Alvarez*, 134 S. Ct. 1224 (2014); *see Medellín v. Texas*, 552 U.S. 491, 513 (2008) ("It is . . . well settled that the United States' interpretation of a treaty is entitled to great weight." (internal quotation marks omitted)); *Swarna v. Al-Awadi*, 622 F.3d 123, 136 (2d Cir. 2010) (noting the "well[-]established canon of deference with regard to Executive Branch interpretation of treaties" (internal quotation marks omitted)).

Here, application of two particular "principles which govern the interpretation of contracts"[24] demonstrates why plaintiffs' first argument is unavailing.

The first such principle is *expressio unius est exclusio alterius*—"express mention of one thing excludes all others"[25]—which is also known as the negative-implication canon.[26] This principle has guided federal courts' interpretations of treaties for over a century.[27]

As noted above, Section 2 of the CPIUN provides that the UN "shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."[28] Especially when coupled with the compulsory

---

[24] *BG Grp., PLC*, 134 S. Ct. at 1208 (internal quotation marks omitted).

[25] *Rivas v. Fischer*, 687 F.3d 514, 551 (2d Cir. 2012).

[26] *See United States v. Bainbridge*, 746 F.3d 943, 947 (9th Cir. 2014).

[27] *See, e.g.*, *Tucker v. Alexandroff*, 183 U.S. 424, 436 (1902) (relying on the principle in interpreting a treaty between the United States and Russia); *United States v. Rauscher*, 119 U.S. 407, 420 (1886) ("[T]he enumeration of offenses in most [extradition] treaties, and especially in the treaty now under consideration, is so specific, and marked by such a clear line in regard to the magnitude and importance of those offenses, that it is impossible to give any other interpretation to it than that of the exclusion of the right of extradition for any others."); *Cannon v. U.S. Dep't of Justice, U.S. Parole Comm'n*, 973 F.2d 1190, 1193 & n.18 (5th Cir. 1992); *cf.* Luigi Crema, *Disappearance and New Sightings of Restrictive Interpretation(s)*, 21 Eur. J. Int'l L. 681, 692–93 (2010) (noting that various international courts, including the International Court of Justice, the European Court of Human Rights, and certain arbitral tribunals, have relied on the principle in interpreting treaties).

[28] CPIUN art. II, § 2.

11

"shall"— which "is universally understood to indicate an imperative or mandate"[29]—Section 2's "express mention of" the UN's express waiver as a circumstance in which the UN "shall [not] enjoy immunity" negatively implies that "all other[ ]" circumstances, including the UN's failure to fulfill its Section 29 obligation, are "exclude[d]."[30] It necessarily follows that the UN's fulfillment of its Section 29 obligation is not a condition precedent to its Section 2 immunity.

This conclusion is buttressed by the second principle of contract interpretation relevant to our analysis—that "conditions precedent to most contractual obligations . . . are not favored and must be expressed in plain, unambiguous language."[31] To manifest

---

[29] *Dallio v. Spitzer*, 343 F.3d 553, 562 (2d Cir. 2003).

[30] *Cf. Olden v. LaFarge Corp.*, 383 F.3d 495, 504 n.2 (6th Cir. 2004) (interpreting the phrase "[e]*xcept as provided* in subsections (b) and (c)" as "demonstrat[ing] that Congress intended the exclusions mentioned in those subsections to be exclusive" (emphasis in original) (internal quotation marks omitted)); *Café Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1288 (11th Cir. 2004) (applying the *expressio unius* principle to the statutory phrase "*except those in residential districts*" (emphasis in original) (internal quotation marks omitted)).

[31] *In re Timely Secretarial Serv., Inc.*, 987 F.2d 1167, 1174 n.7 (5th Cir. 1993); *see Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) ("Conditions precedent are not readily assumed. . . . Thus, in determining whether a particular agreement makes an event a condition, courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition." (brackets and internal quotation marks omitted)); *Navarro v. F.D.I.C.*, 371 F.3d 979, 981 (7th Cir. 2004) ("Conditions precedent are generally disfavored; in resolving doubts about whether a contract contains a condition precedent, interpretations that reduce the risk of forfeiture are favored." (citing Restatement (Second) of Contracts § 227(1) (1981))).

12

their intent to create a condition precedent, "[p]arties often use language such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to.'"[32] No such language links Sections 2 and 29 in the CPIUN. Of course, "specific talismanic words are not required."[33] But "there is [also] no . . . [other] language [in the CPIUN] which, even straining, we could read as imposing" the UN's fulfillment of its Section 29 obligation as a condition precedent to its Section 2 immunity.[34]

It is also significant that the Executive Branch's interpretation of the CPIUN—an interpretation "entitled to great weight"[35]—accords with our own. The Executive Branch sees "[n]othing in Section 29 . . . [that] states, either explicitly or implicitly, that

---

[32] *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1100 (2d Cir. 1992) (some internal quotation marks omitted); *see Fed. Labor Relations Auth. v. Aberdeen Proving Ground, Dep't of the Army*, 485 U.S. 409, 412 (1988) (describing "only if'" as "the language of . . . a condition precedent" (internal quotation marks omitted)); *Bank of N.Y. Mellon Tr. Co.*, 821 F.3d at 305 (describing "if," "on condition that," "provided that," "in the event that," and "subject to" as the "recognized linguistic conventions of condition" (internal quotation marks omitted)); Restatement (Second) of Contracts § 226 cmt. a (1981) (observing that, although "[n]o particular form of language is necessary to make an event a condition, . . . such words as 'on condition that,' 'provided that' and 'if' are often used for this purpose").

[33] *Bank of N.Y. Mellon Tr. Co.*, 821 F.3d at 305.

[34] *See Ginett*, 962 F.2d at 1100.

[35] *Lozano*, 697 F.3d at 50 (internal quotation marks omitted).

compliance with its terms is a precondition to the UN's immunity under Section 2."[36] Neither do we.

Plaintiffs' arguments to the contrary are unconvincing. For example, plaintiffs argue that "[t]he UN's post-ratification . . . practice pursuant to . . . Section 29 . . . demonstrates that entitlement to immunity is premised on the provision of alternative dispute settlement."[37] Plaintiffs' chief example of this supposed practice is the UN's statement before the International Court of Justice that the UN's immunity "*does not leave a plaintiff without remedy* [because] . . . in the event that immunity is asserted, a claimant seeking redress against the Organization *shall* be afforded an appropriate means of settlement [under Section 29]."[38] This statement, however, suggests at most that the UN views Section 29 as "more than merely aspirational"—as "obligatory and perhaps enforceable."[39] It does not in any way suggest that the UN views Section 29 as a condition precedent to Section 2.

Plaintiffs also argue that "foreign signatories to the CPIUN have repeatedly held that the availability of alternative dispute settlement is a material condition to international organizations'

---

[36] Government's Br. 10.

[37] Pls.' Br. 30.

[38] *Id.* (alterations and emphases in original) (quoting Verbatim Record, *Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights*, Advisory Opinion, 1999 I.C.J. Rep. 62 (Dec. 10, 1998)).

[39] *Georges*, 84 F. Supp. 3d at 250.

14

entitlement to immunity," and that "these foreign courts' views provide persuasive authority for this case, per the direction of the U.S. Supreme Court."[40] This argument is misleading. The Supreme Court has indeed held that, "[i]n interpreting any treaty, the opinions of our sister signatories are entitled to considerable weight."[41] But in so holding, the Court was obviously referring to the opinions of states that are parties to the treaty that is being interpreted *regarding that same treaty*, not the opinions of states that happen to have ratified the treaty at issue *regarding another treaty entirely*. Most of plaintiffs' examples fall into the latter category— they are cases from the courts of states that have ratified the CPIUN,

---

[40] Pls.' Br. 31.

[41] *Abbott*, 560 U.S. at 16 (brackets, ellipsis, and internal quotation marks omitted). In the foregoing quotation, the Supreme Court was likely using "signatories" in an informal, almost colloquial way. It is not the opinions of states that have merely *signed* a treaty that we should find persuasive; it is the opinions of states that have *ratified* the treaty. As the Vienna Convention on the Law of Treaties provides, "[t]here shall be taken into account, together with the context" of a treaty, "[a]ny subsequent practice in the application of the treaty which establishes the agreement of the *parties* regarding its interpretation." Vienna Convention on the Law of Treaties, art. 31(3), May 23, 1969, 1155 U.N.T.S. 331 (emphasis supplied); *see Mora v. New York*, 524 F.3d 183, 196 n.19 (2d Cir. 2008) ("Although the United States has not ratified the Vienna Convention on the Law of Treaties, our Court relies upon it as an authoritative guide to the customary international law of treaties, insofar as it reflects actual state practices." (internal quotation marks omitted)). A state does not become a *party* until it "*ratifies*, and thus becomes *bound* by, the treaty in question," *Hollis v. O'Driscoll*, 739 F.3d 108, 111 n.2 (2d Cir. 2014) (emphases supplied), as its "*signing* of [the] treaty serves only to authenticate [the] text, and does not establish [its] consent to be bound." *Id.* (emphasis in original) (alterations and internal quotation marks omitted).

15

but they pertain to unrelated agreements, including the agreement between France and the UN Educational, Scientific and Cultural Organization;[42] and the agreement between Italy and the International Plant Genetic Resources Institute regarding its headquarters in Rome.[43] Another of the plaintiffs' examples appears to have involved the CPIUN, but the portion of the holding relevant

---

[42] Pls.' Br. 31; A-342–43.

[43] Pls.' Br. 31; A-349–51. Plaintiffs also refer to *Maida v. Administration for International Assistance*, Cass., 27 maggio 1955, 39 RDI 546, 23 ILR 510, a decision from Italy's highest court that is now over 60 years old. *See* Pls.' Br. 32. Plaintiffs do not include in their appendix a copy of *Maida*, in English or Italian; instead, they include a chapter of a book in which *Maida* is discussed. *See* A-359–63 (quoting Riccardo Pavoni, *Italy*, *in The Privileges and Immunities of International Organizations in Domestic Courts* 155, 155–63 (August Reinisch ed., 2013)).

Here is what the chapter's author has to say about *Maida*: "As early as 1955, the Supreme Court denied immunity to the International Refugee Organization (IRO) in a labour dispute, on the grounds that the arbitral process envisaged in the IRO's Staff Regulations was unlawful . . . . *The Court's basis for this pioneering finding is not straightforward. It was probably influenced by its assumption of an implied waiver of immunity arising from repeated references to the applicability of Italian legislation in the legal instruments regulating the IRO's activities in Italy*. But the Court also mentioned the necessity to secure the individual right of access to justice." A-362 (emphasis supplied) (quoting Pavoni, *ante* note 43, at 160).

The pertinence to the instant appeal of a case in which the CPIUN does not appear to have been directly discussed—and whose holding is ambiguous but likely grounded in implied waiver, a concept not at issue here—is, to say the least, unclear.

to the plaintiffs' argument is based on an interpretation of the state's constitution rather than the CPIUN itself.[44]

As we have seen, whether a term constitutes a condition precedent depends on the particular language of the instrument that is being evaluated.[45] For the most part, plaintiffs have not suggested that the aforementioned agreements contain language that is even comparable—much less identical—to that found in Sections 2 and 29 of the CPIUN. Thus, plaintiffs' reliance on cases interpreting those agreements is misplaced.[46]

---

[44] Pls.' Br. 31; A-349–51. That case, *Stavrinou v. United Nations,* (1992) CLR 992, ILDC 929 (Cyprus 1292), is a 1992 case from the Supreme Court of Cyprus. The plaintiffs rely on *Stavrinou* for the proposition that the Supreme Court of Cyprus only granted immunity to the UN because an alternate forum was available. Pls.' Br. 31. We note, however, that the availability of an alternate forum was held relevant only to the question of whether the grant of immunity to the UN violated the Cypriot constitution. *Id.* (describing the Supreme Court of Cyprus as holding that the grant of absolute immunity to the UN "did not encroach upon the right of access to courts as protected by the Cypriot Constitution, because the mechanism internal to the UNFICYP for settling disputes with its local personnel ensured that '[t]he applicant was not left without a remedy'"). That decision did not purport to interpret the CPIUN and is therefore inapplicable to the instant case.

[45] *See Clukey v. Town of Camden*, 797 F.3d 97, 101 (1st Cir. 2015) ("To determine whether the . . . provision . . . creates a condition precedent, we necessarily must focus closely on its specific language."); *see also ante* notes 20–22 and accompanying text (discussing the importance of focusing on the particular language of a treaty).

[46] An agreement's "overall structure" may also inform whether a term constitutes a condition precedent. *Univ. Emergency Med. Found. v. Rapier Invs., Ltd.,* 197 F.3d 18, 23 (1st Cir. 1999); *see Suburban Transfer Serv., Inc. v. Beech*

Plaintiffs do argue that the agreement between France and UNESCO, at issue in *UNESCO v. Boulois*, Cour d'Appel [CA] [Court of Appeal] Paris (Fr.), June 19, 1998, is "virtually identical" to the CPIUN.[47] Notwithstanding textual similarities between the two treaties, we do not find the French court's interpretation relevant to this case. The France-UNESCO agreement arose in a materially different context than the CPIUN: it is a bilateral agreement between France and UNESCO whereas the CPIUN is a multilateral treaty signed by a number of countries. That a French court interpreting an agreement between France and a UN agency found that the agreement required the establishment of an alternative forum for dispute resolution has little bearing on the interpretation of the CPIUN in this case.

For these reasons, we hold that the UN's fulfillment of its Section 29 obligation is not a condition precedent to its Section 2 immunity.[48]

---

*Holdings, Inc.*, 716 F.2d 220, 225 (3d Cir. 1983) (relying on "the structure of the Agreement as a whole" in determining that one of the agreement's provisions was a condition precedent). But plaintiffs have also not argued that the structures of the cited agreements are similar to that of the CPIUN.

[47] Pls.' Reply Br. 17.

[48] The foregoing analysis is consistent with our decision in *Brzak v. United Nation*, 597 F.3d 107, 112 (2d Cir. 2010), in which we held that the purported inadequacies of the UN's dispute resolution mechanism did not result in a waiver of absolute immunity from suit.

## II. Material Breach

Plaintiffs next argue that "[t]he District Court's finding of immunity was erroneous . . . because Section 29 is a material term to the CPIUN as a whole."[49] According to plaintiffs, the UN's material breach of its Section 29 obligation means that it "is no longer entitled to the performance of duties owed to it under" the CPIUN, including its Section 2 immunity.[50] We need not reach the merits of this argument, however, because plaintiffs lack standing to raise it.

As we have recently reiterated, "absent protest or objection by the offended sovereign, [an individual] has no standing to raise the violation of international law as an issue."[51] The plaintiffs have not identified any sovereign that has objected to the UN's alleged material breach. To the contrary, the United States has asked us to affirm the District Court's judgment, and no other country has expressed an interest in this litigation.[52]

---

[49] Pls.' Br. 35.

[50] *Id.* at 37.

[51] *United States v. Garavito-Garcia*, —F.3d—, 2016 WL 3568164, at *3 (2d Cir. July 1, 2016) (internal quotation marks omitted); *see United States v. Emuegbunam*, 268 F.3d 377, 390 (6th Cir. 2001) ("It is well established that individuals have no standing to challenge violations of international treaties in the absence of protest by the sovereign involved." (internal quotation marks omitted)).

[52] *See* Government's Br. 22 ("Because [plaintiffs] are not a party to [the CPIUN] . . . , they may not independently assert an alleged breach and insist upon their own preferred remedy.").

It is true that there is an exception to this rule where a treaty contains "express language" "creat[ing] privately enforceable rights . . . , or some other indication that the intent of the treaty drafters was to confer rights that could be vindicated in the manner sought by . . . affected individuals," such as plaintiffs in this case.[53] "[B]ut [plaintiffs have] not identified, nor can we locate," any such indication in the CPIUN, and "[s]tanding is therefore lacking."[54]

It is plaintiffs' position that the case law described above is "inapposite."[55] They contend that, "[r]egardless of whether a treaty provides an enforceable private right of action, individuals may invoke breach in a responsive posture."[56] In support of this position, plaintiffs cite a law review article stating that "case law is consistent with [the] understanding that a treaty may be enforced defensively even when there is no private right of action."[57] But the same article makes clear what it means by "defensive enforcement," which it

---

[53] *United States v. Suarez*, 791 F.3d 363, 367 (2d Cir. 2015) (internal quotation marks omitted).

[54] *Garavito-Garcia*, 2016 WL 3568164, at *3; *see Medellín*, 552 U.S. at 506 n.3 ("[T]he background presumption is that international agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts." (brackets and internal quotation marks omitted)).

[55] Pls.' Reply Br. 20.

[56] *Id.* at 21.

[57] *Id.* at 22 (alteration omitted) (quoting Oona A. Hathaway, Sabria McElroy & Sara Aronchick Solow, *International Law at Home: Enforcing Treaties in U.S. Courts*, 37 Yale J. Int'l L. 51, 84 (2012)).

contends "can be found in two types of cases": those in which a private party uses a treaty (1) "to defend against a claim by the United States government" or (2) "to defend against a claim by another private party under state or federal law."[58] Neither of these situations is presented here. No claim has been asserted against plaintiffs; rather, it is plaintiffs who have asserted the claims underlying this action. Accordingly, plaintiffs' argument fails even on its own terms.[59]

## III. Right of Access to Federal Courts

Lastly, plaintiffs argue that the District Court erred "because it violated the U.S. citizen Plaintiffs' constitutional rights to access the federal courts by applying immunity in this case."[60] This argument fails to convince.

As we stated in *Brzak v. United Nations*, in which we rejected a virtually indistinguishable challenge to an application of Section 2 of the CPIUN, plaintiffs' argument does little more "than question why immunities in general should exist."[61] But "legislatively and judicially crafted immunities of one sort or another have existed since well before the framing of the Constitution, have been

---

[58] Hathaway et al., *ante* note 57, at 84.

[59] We express no opinion regarding the soundness of the distinction drawn in the article between the offensive and defensive enforcement of treaties.

[60] Pls.' Br. 49.

[61] *See Brzak*, 597 F.3d at 114.

21

extended and modified over time, and are firmly embedded in American law."[62] Plaintiffs' argument, if correct, would seem to defeat not only the UN's immunity, but also "judicial immunity, prosecutorial immunity, and legislative immunity."[63] Plaintiffs do not persuasively differentiate the quotidian and constitutionally permissible application of these doctrines from application of Section 2 of the CPIUN here.[64]

## CONCLUSION

We have considered all of plaintiffs' arguments on appeal and find them to be without merit. Accordingly, we **AFFIRM** the District Court's January 15, 2015 judgment dismissing plaintiffs' action for lack of subject matter jurisdiction under the CPIUN.

---

[62] *Id.*

[63] *Id.*

[64] Plaintiffs also argue that "[t]he District Court further erred in holding that [individual defendants] Ban and Mulet are immune from suit." Pls.' Br. 47. But plaintiffs' only contention in support of this argument is that "UN officers are not entitled to immunity under the CPIUN when the UN itself is not entitled to immunity under the CPIUN." *Id.* Because we have already rejected plaintiffs' argument that the UN is not entitled to immunity, we must reject their argument that Ban and Mulet are not entitled to immunity as well.